GREGORY M. LYONS, *ET UX, ET AL.,* PLAINTIFFS-APPELLANTS, v. CITY OF CAMDEN, *ET AL.,* DEFENDANTS-RESPONDENTS.

Argued December 5, 1966—Decided February 6, 1967.

526

*Mr. Carlton W. Rowand* argued the cause for appellants.

*Mr. Joseph M. Nardi, Jr.* argued the cause for respondents.

The opinion of the court was delivered by

FRANCIS, J. Plaintiffs, 85 resident property owners of the City of Camden, brought this action in lieu of prerogative writ to review a declaration by the Camden City Planning Board and the governing body of the City of Camden that the area of the city in which they live is a blighted area within the meaning of *N. J. S. A.* 55 :14A–31 *et seq.* The declaration of blight is not limited to the particular portion of the city where plaintiffs reside. It encompasses a much larger surrounding and contiguous area. Plaintiffs' attack is directed only against so much of the determination of blight as relates to the area in which their properties are located. This section, they assert, is not blighted, and is easily severable from the remainder of the area. Consequently they charge that the two public bodies acted arbitrarily and capriciously in not excluding it from the larger area. The trial court concluded that the determinations of the planning board and the city were supported in their entirety by substantial evidence, and therefore entered judgment in defendants' favor. Plaintiffs sought a review in the Appellate Division, but we certi-

fied the appeal on our own motion before it was argued there. *R. R.* 1:10–1(a).

The section of the City of Camden involved is known as the Northshore area. It consists of 272.45 acres and is said to have "sound" boundaries in accordance with recognized city planning criteria. It is bounded on the west by the New Jersey channel of the Delaware River; on the north by the city line and the tracks of the Pennsylvania Railroad; on the east by a proposed 155-foot-wide right of way (a reconstruction of Harrison Avenue, running from State Street to 36th Street); and on the south by a large housing complex on the opposite side of East State Street. Most of the area, 210.67 acres or 77.3%, consists of undeveloped land; 23.66 acres are streets and rights of way; many of the streets are paper streets. Seventy-four per cent (74%) of the vacant land is owned by the City of Camden; 47 acres of this are under water between the shore line and the United States Pierhead and Bulkhead line.

Developed land is generally concentrated in two locations. One is between 27th and 30th Streets; the other extends from Beidman Avenue to 36th Street. Residential land occupies 11.61 acres; commercial, 11.07 acres; industrial, 8.28 acres; and public lands, 7.16 acres. There are 198 structures in this area, of which 168 are dwellings; 89 of the dwellings were said to be substandard by the planning board's experts. Plaintiffs deny that they are substandard.

On November 12, 1965 the city by resolution pursuant to *N. J. S. A.* 40:55–21.2 authorized the planning board to investigate the section of the city described above to determine whether it is a blighted area within the contemplation of *N. J. S. A.* 55:14A–32. (The definition of "blighted area" is the same in *N. J. S. A.* 40:55–21.1.) The board conducted the investigation and thereafter, on notice to interested parties, held a public hearing. At the hearing, which was recorded stenographically, a number of witnesses, expert planners and otherwise, testified at the instance of the board; maps and photographs were produced also. The witnesses

described the area and its physical condition and gave their reasons why it should be declared blighted. A report, prepared after study of the area by a firm of planning and urban renewal consultants, was introduced. It contained elaborate specifications in support of their conclusion that the area is blighted. Among other things it reported that, of 166 residential dwellings located there, 89 were substandard and 33 others had significant deficiencies.

During this presentation of the results of the board's investigation of the condition of the area, the attorney for the plaintiffs in the present action sought to cross-examine various witnesses with respect to the assertion that the section in which plaintiffs' homes are located is blighted, and also as to whether it would not be proper and feasible to exclude that section from the area the witnesses felt should be declared blighted. Cross-examination was not allowed because the board considered the proceedings a legislative and not a trial type hearing. It is true such hearings are of the legislative type and that cross-examination is not a matter of *right*. *Wilson v. City of Long Branch,* 27 *N. J.* 360, 385–389 (1958), *certiorari* denied 358 *U. S.* 873, 79 *S. Ct.* 113, 3 *L. Ed. 2d* 104 (1958); *Stahl v. Paterson Bd. of Finance,* 62 *N. J. Super.* 562, 584 (*Law Div.* 1960), aff'd, 69 *N. J. Super.* 242 (*App. Div.* 1961); *Sorbino v. City of New Brunswick,* 43 *N. J. Super.* 554 (*Law Div.* 1957); and, *cf. Rindge Co. v. Los Angeles County,* 262 *U. S.* 700, 709, 43 *S. Ct.* 689, 67 *L. Ed.* 1186, 1193 (1923). Of course, cross-examination within reasonable limits is permissible in the discretion of the board. If allowed in some situations and kept in hand, perhaps subsequent court action may be avoided. But, we repeat, the matter rests in the wisdom and judgment of the board and the judicial branch of the government will not intrude.

After the testimony and exhibits covering its investigation had been put in the record, the board announced that any interested party who cared to be heard either orally or in writing might present himself. The attorney for these plain-

tiffs then made a long statement in their behalf in opposition to a declaration of blight so far as it might include the portion of the Northshore area in which they lived. Upon inquiry as to whether plaintiffs would be satisfied to have the attorney speak for them rather than have each one state his opposition and the reasons therefor, it was agreed that the attorney's statement would suffice. Then plaintiffs' names and addresses were placed in the record, and photographs of some of their homes were submitted. All other interested persons who chose to speak were permitted to do so, and a number of written statements of objectors were received.

Two weeks later the board adopted a resolution declaring the entire Northshore area blighted. Plaintiffs' properties were included. The report of its investigation, the record of the hearing and the resolution were submitted to the city council as required by *N. J. S. A.* 40:55-21.7. About seven weeks later the council, after reviewing the matter, approved the board's report and resolution, and adopted its own resolution determining that the entire area is blighted.

## I

In the proceeding now before us, plaintiffs' attack on both resolutions challenges the determination that their properties are substandard. They contend also that the section of the Northshore area where their homes are located should be and can be excluded conveniently from the total area declared blighted. They urge that the total area could be divided into what they denominate the "larger or blighted area," and the "smaller area," allegedly not blighted, which contains their homes. Although the precise boundaries of the "smaller area" are not entirely clear, they seem to extend from North 27th Street to North 36th Street and from Harrison Avenue to the channel. The two areas, "large" and "smaller," are separated from each other only by North 27th Street. There appears to be no doubt that, although many of the homes in the smaller area were declared sub-

standard, a substantial number of them cannot be so described.

A pretrial conference was held several weeks before the hearing in the Law Division of the Superior Court. At that time the parties agreed that both the planning board and the city council had followed the pertinent statutory procedure. Many exhibits were marked in evidence without objection: the resolutions declaring the area blighted, pertinent maps and surveys, aerial photographs, the report of preliminary investigation by the board, the consultants' survey, a booklet entitled "Is this House Blighted" prepared by two of the plaintiffs and containing photographs of theirs and other homes, many written objections filed with the board, and the transcript of the public hearing described above. Plaintiffs' attorney did not request the marking of any exhibits. He indicated, however, that he intended to present some exhibits at the future trial.

It is apparent from the pretrial order that the parties and the court did not have a common understanding as to the nature of the forthcoming trial. The trial judge stated in the order that plaintiffs were not entitled to a trial *de novo*, and that the issue was whether the declaration of blight was supported by substantial evidence. He noted also that plaintiffs seemed to feel they were entitled to a trial *de novo*, and he granted their attorney leave to file a brief in support of that view. It was not filed.

The statute established the criterion for testing the validity of the board's and the city council's determination of blight. It says that "a determination that the area * * * is a blighted area, if supported by substantial evidence, shall be binding and conclusive upon all persons affected by the determination." *N. J. S. A.* 40:55–21.6. We have the impression from the form of the pretrial order, and from the oral arguments on the subsequent hearing day, that the court and counsel for the board and the city held the opinion that the Law Division review of the validity of the blight determination was limited to a study of the record made before the

board, and that further testimony or documentary evidence was not permissible. Just what plaintiffs' attorney's position was as to the nature of the review and as to his clients' right to produce further witnesses, or as to how he should go about attacking the validity of the blight determination is certainly not clear. He made no attempt to call witnesses, nor did he request that any of the board's witnesses be produced for examination by him. He did complain that he was not allowed to cross-examine the board's witnesses at the hearing below with respect to their assertion that many houses where plaintiffs lived were substandard and that their section should be included in the determination that the entire Northside area is blighted. In fairness, however, it must be said, in view of the statements of the trial court and his adversaries, that he could reasonably have believed the review to be given his clients in the Law Division would be limited to the record already made before the board.

 We desire to make plain that when a planning board's or governing body's determination of blight is challenged by a proceeding in lieu of prerogative writ, the review is *not* confined to the record made below. The function of the Law Division as prescribed by the statute is to decide whether the determination of the public body is supported by substantial evidence. *N. J. S. A.* 40:55–21.6. Absence of such support would indicate arbitrary or capricious action. As is usual, however, the determination of the public body would come to the Law Division accompanied by a presumption of validity, and the burden would be upon the attacker to demonstrate lack of the required substantial evidence support.

 At the hearing in the Law Division in such cases customarily the entire record made before the planning board, including particularly the stenographic transcript of the evidence adduced there, is introduced by consent of the parties. Of course, the city council record is submitted also. Rarely, however, does it consist of anything more than the confirmatory resolution of blight based on the proceedings before the planning board. The party attacking the blight

declaration may then offer any additional pertinent evidence by means of witnesses or documents in support of his claim that the action of the board was not supported by substantial proof. That procedure was followed in *Wilson v. City of Long Branch*, 27 *N. J.*, at *p.* 391; *Sorbino v. City of New Brunswick*, 43 *N. J. Super.*, at *pp.* 562–563; *Stahl v. Paterson Bd. of Finance*, 62 *N. J. Super.*, at *p.* 574. In addition, and although it does not seem to have been done in the cited cases, there is no sound reason why the plaintiffs may not produce for testimonial examination any witnesses who testified or made reports or furnished documents on matters relevant to the board's finding of blight at the legislative hearing. The appearance may be accomplished by subpoena, by consent of the public bodies involved, or by court order if necessary. Reasonable cooperation should be shown in this connection by the public bodies. If and when such persons appear in the Law Division, a fair and reasonable latitude should be allowed in their examination. It must be kept in mind that at the board hearing cross-examination was not permitted. Consequently, in questioning such persons, plaintiffs should not be held to the restrictive rules governing the direct examination of one's own witnesses. Naturally, however, the trial judge must stay in control and keep the questioning within reasonable bounds and within reasonable limits of relevance. If, at the close of the plaintiffs' case, the municipality or the planning board wishes to supplement the existing record by further competent evidence, it should be allowed to do so. The trial court's decision as to whether the resolution of blight is supported by substantial evidence should then be made upon the entire proof submitted.

It does not seem necessary to discuss other possible methods of reviewing a declaration of blight in the Law Division. The usual procedure, as revealed by the cases referred to above, was followed, except for the calling of additional witnesses. The record before the planning board on which the finding of blight was made was submitted by consent. Unfortunately plaintiffs seem to have received the impression that the pro-

ceedings before the board could not be augmented by the testimony of witnesses or the introduction of exhibits. In fact, when they sought at the Law Division hearing to put some photographs in evidence which were not introduced before the board, both the trial court and defense counsel indicated that at that stage of the proceedings, even though the photographs were relevant, they were being admitted as a matter of grace and not of right. This was incorrect, but in justice to defendants it must be said that had plaintiffs been a little more specific about what it was they wanted to present by way of further proof or examination of witnesses, the dilemma might have been resolved satisfactorily to all concerned.

 Under the circumstances, in justice to the plaintiffs whose homes undoubtedly will be taken eventually if the declaration of blight is sustained, we are of the opinion that they should be given an opportunity to present to the Law Division any additional pertinent evidence they may have to show that inclusion of their section of Northshore in the area declared blighted is not supported by substantial evidence. At this renewed hearing plaintiffs are entitled to produce proof in documentary form or by calling witnesses for the purpose of demonstrating that the board acted arbitrarily in not excluding the "smaller" area, as they refer to it, from the blighted area. In this connection, as we have indicated above, persons whose services were utilized by the planning board in support of the over-all blight finding may be called and examined by plaintiffs. If such persons are called, plaintiffs should note that a sensible and reasonable interrogation is contemplated; one confined to matters relevant to the precise fact issue raised on this appeal. The scope of the examination must be left to the sound discretion of the trial court.

 With respect to the remand to be ordered, we express no opinion on the merits of the controversy. It should be noted, however, that plaintiffs have the burden of establishing that inclusion of the "smaller" residential section of the Northshore area in the blighted area has no substantial support in the evidence. Planning boards have the broad

statutory authorization to attack the problem of blight on an area rather than a structure-by-structure basis. As the United States Supreme Court said in *Berman v. Parker,* 348 *U. S.* 26, 35–36, 75 *S. Ct.* 98, 104, 99 *L. Ed.* 27, 39 (1954), "It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area." Moreover, it is settled that the area to be classed as blighted is the portion of the municipality which in the judgment of the planning board or governing body, or both, as the case may be, reasonably falls within the definition of "blighted area" as laid down by the Legislature. *N. J. S. A.* 40:55–21.1. The fact that such an area includes some sound homes or buildings, or even that incorporated therein as an integral part and necessary to the accomplishment of the redevelopment plan is a portion of the municipality containing structures which are not substandard, is not sufficient to provoke a judicial pronouncement that the public agency's determination of blight is based wholly or partly on a palpable abuse of discretion. Denial of the right of the municipality to draw into a blighted area certain houses or buildings which are in good condition might well serve to defeat the over-all legislative purpose, namely, the redevelopment of blighted *areas.* See *Wilson v. City of Long Branch, supra,* 27 *N. J.,* at 379, *pp.* 381; *Stahl v. Paterson Bd. of Finance, supra; Velishka v. City of Nashua,* 99 *N. H.* 161, 106 *A. 2d* 571 (*Sup. Ct.* 1954) ; *Oliver v. City of Clairton,* 374 *Pa.* 333, 98 *A. 2d* 47 (*Sup Ct.* 1953) ; Annotation: *Urban Redevelopment Laws,* 44 *A. L. R. 2d* 1414 (1955) ; 4 *A. L. R. 2d, Later Case Service* 991–993 (1965). These are the criteria which plaintiffs must be mindful of in presenting their attack on the portion of the finding of blight covering the section of the Northside area which they charge should not have been included.

## II

In passing, plaintiffs summarily attack the constitutionality of *N. J. S. A.* 40:55–21.10 as a denial of due

process under the Fourteenth Amendment to the *Federal Constitution* and *Article* I, *pars.* 1 and 5 of the *New Jersey Constitution.* The section of the statute referred to provides that after an area is declared blighted by the appropriate public body, the municipality "may, but shall not be required to, acquire the real property within the area by purchase, or by eminent domain proceedings * * *." The issue was disposed of in *Wilson v. City of Long Branch, supra,* and there is no need to review the matter again. See also, *Carroll v. City of Camden,* 47 *N. J.* 238 (1966), where an appeal to this Court in a similar situation was dismissed for want of a substantial constitutional question.

III

For the reasons stated above the matter is remanded to the Law Division for the further hearing described. In view of the public nature of the proceeding and the delay already encountered, the hearing should be set down expeditiously. At the conclusion thereof the trial court shall decide anew whether the determination of blight made by the planning board and the city council in whole or in the part challenged by plaintiffs is supported by substantial evidence. When that determination is made any aggrieved party desiring a review thereof may apply directly to this Court for certification.

Haneman, J., concurs in result.

HANEMAN, J. (concurring). I concur in the opinion of Justice FRANCIS.

However, on the hearing in the Law Division, I would not place on the plaintiffs the burden of subpoenaing for cross-examination, those witnesses who were produced by defendants at the legislative hearing. I would oblige plaintiffs to make an application upon notice to defendants and under oath, setting forth the names of such witnesses desired for cross-examination, and a statement of the reasons for such cross-examination. After hearing, if the court finds that

plaintiffs have a reasonable ground for the attendance of such witnesses, an order should be entered directing defendants to procure the attendance of the named persons at a designated time and place for cross-examination. By this proceeding, the troublesome questions of locating witnesses, obtaining the presence of defendants' experts and payment of witness fees are resolved and placed on defendants who should rightfully bear these burdens.

*For remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN — 7.

*Opposed* — None.