712 A.2d 255 (1998)
Glynis FORBES, Toi Yan Lam, d/b/a Great Wall Restaurant, and Vocal (Voice of Concerned Area Landowners), Plaintiffs-Appellants, and
Manny Adeleye, d/b/a Booey's Discount, Plaintiff,
v.
BOARD OF TRUSTEES OF THE TOWNSHIP OF SOUTH ORANGE VILLAGE, Planning board of the Township of South Orange Village, Defendants-Respondents, and
Sickley Brothers Corp., a New Jersey corporation, Southwest Corp., a New Jersey corporation, and New Jersey Transit Corp., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued June 2, 1998.
Decided June 19, 1998.
*256 Mary S. Henifin, Plainsboro, for plaintiffs-appellants (Goldshore & Wolf, attorneys; Ms. Henifin, Robert J. Cash and Michael J. O'Malley, of counsel and on the brief).
Yvonne Marcuse, Woodbridge and Edwin R. Matthews, Short Hills, for defendant-respondent Board of Trustees of the Township of South Orange Village (Wilentz, Goldman & Spitzer, Woodbridge, and Matthews & White, Short Hills, attorneys; Ms. Marcuse, of counsel and on the joint brief; Mr. Matthews, of counsel and on the joint brief; Robert J. Pansulla, on the joint brief).
Frederic S. Kessler, Newark, for defendant-respondent Planning Board of the Township of South Orange Village (Tompkins, McGuire & Wachenfeld, attorneys; Mr. Kessler, of counsel and on the joint brief).
Before Judges PRESSLER, WALLACE and CARCHMAN.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is an appeal from a judgment dismissing plaintiffs' action in lieu of prerogative writs by which they challenged the actions of the Board of Trustees of South Orange Village (Village) and the Planning Board of South Orange in designating a central business district redevelopment area and adopting a redevelopment plan for the area.
Plaintiff Glynis Forbes is a residential tenant of a building within the redevelopment area; plaintiff Toi Yan Lam is the proprietor, in leased premises, of a restaurant within the redevelopment area; and plaintiff VOCAL is *257 an unincorporated, non-profit citizens' group whose two members are both South Orange residents, one of whom owns property in the Village but not in the redevelopment area. The fourth named plaintiff, Manny Adeleye, also a proprietor of a retail business in leased premises in the redevelopment area, filed an affidavit with the court asserting that he had never understood that he was to be a plaintiff in a law suit and did not wish to be a plaintiff in this one.
We affirm the judgment of the Law Division substantially for the reasons orally stated on the record by Judge Alvin Weiss. We add, however, the following comments.
The main thrust of plaintiffs' challenge to the redevelopment-area designation and redevelopment plan is that the constitutional and statutory standards governing the determination by municipal agencies that an area is in need of redevelopment were not complied with. While we appreciate the validity of plaintiffs' expressed philosophical and jurisprudential concerns, we are persuaded that those concerns are not here implicated. In sum, we agree with Judge Weiss, based on the record of the municipal action as supplemented by the testimony taken by him, that there was substantial evidence to support the municipal designation of the area as in need of redevelopment and to warrant municipal adoption of the redevelopment plan.[1]
The nub of plaintiffs' argument is that there was an insufficient basis to justify the finding that the designated area was, as constitutionally required, blighted. They claim that the present governing statute, N.J.S.A. 40A:12A-1 to -49, the 1992 Local Redevelopment and Housing Law (LRHL), was misconstrued by defendants as not requiring a prerequisite blight determination and that defendants proceeded with their designation of the redevelopment area without meeting the blight standard. We disagree.
In evaluating plaintiffs' argument, we start, as do they, with the legislative framework. We begin with N.J. Const. art. VIII, § 3, ¶ 1, which provides in full as follows:
The clearance, replanning, development or redevelopment of blighted areas shall be a public purpose and public use, for which private property may be taken or acquired. Municipal, public or private corporations may be authorized by law to undertake such clearance, replanning, development or redevelopment; and improvements made for these purposes and uses, or for any of them, may be exempted from taxation, in whole or in part, for a limited period of time during which the profits of and dividends payable by any private corporation enjoying such tax exemption shall be limited by law. The conditions of use, ownership, management and control of such improvements shall be regulated by law.
This provision of the Constitution provided authorization for this State's initial redevelopment law, the Blighted Area Act, N.J.S.A. 40:55-21.1, first adopted by L. 1949, c. 187[2] and thereafter amended, as well as the various implementing and related legislative enactments that followed.[3] By L. 1992, c. 79, the Legislature replaced what had by then become a patchwork of separate enactments by adopting the LRHL. Prior to the enactment of the LRHL and consistent with the scope of the constitutional authorization, a finding of blight was the expressly-stated, statutorily mandated precondition for the designation of a redevelopment area. See former N.J.S.A. 40:55-21.6. Although the Constitution did not define blight, the Legislature promptly undertook to do so in its original enactment of N.J.S.A. 40:55-21.1, which had defined that term as follows:
1. As used in this act, the term "blighted area" shall mean an area in any municipality *258 wherein there exists to a large extent:
(a) Buildings and structures which are unfit, unsanitary and unsafe for human use and habitation by reason of age, physical deterioration, dilapidation or obsolescence;
(b) Buildings and structures which are so situated and used as to have therein more inhabitants than can be fitly and safely housed;
(c) Buildings and structures which have economically deteriorated and where there is a disproportion between the cost of municipal services rendered to the area as compared with the tax revenue derived therefrom; or
(d) A prevalence of factors conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, crime and poverty.
Clearly, subparagraphs (a), (b), and (d) of that original enactment defined only residential blight, the alleviation and elimination of which was commonly referred to as slum clearance. See, e.g., DeSimone v. Greater Englewood Housing Corp. No. 1, 56 N.J. 428, 437, 267 A.2d 31 (1970). Commercial blight was generally defined by paragraph (c) and was expressed in terms of economic deterioration and the disproportion between the cost of municipal services and the generation of tax revenues. The blight definition was expanded by L. 1951, c. 248, § 1, which replaced originally enacted N.J.S.A. 40:55-21.1 to read in full as follows:
As used in this act, the term "blighted area" shall mean an area in any municipality wherein there exists any of the conditions hereinafter enumerated:
(a) The generality of buildings used as dwellings or the dwelling accommodations therein are substandard, unsafe, unsanitary, dilapidated, or obsolescent, or possess any of such characteristics, or are so lacking in light, air, or space, as to be conducive to unwholesome living;
(b) The discontinuance of the use of buildings previously used for manufacturing or industrial purposes, the abandonment of such buildings or the same being allowed to fall into so great a state of disrepair as to be untenantable;
(c) Unimproved vacant land, which has remained so for a period of ten years prior to the determination hereinafter referred to, and which land by reason of its location, or remoteness from developed sections or portions of such municipality, or lack of means of access to such other parts thereof, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital;
(d) Areas (including slum areas), with buildings or improvements which by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community;
(e) A growing or total lack of proper utilization of areas caused by the condition of the title, diverse ownership of the real property therein and other conditions, resulting in a stagnant and unproductive condition of land potentially useful and valuable for contributing to and serving the public health, safety and welfare;
By L. 1986, c. 151, § 1, section (f) was added to N.J.S.A. 40:55-21.1, reading as follows:
(f) Areas, in excess of 10 contiguous acres, whereon buildings or improvements have been destroyed, consumed by fire, demolished or altered by the action of storm, fire, cyclone, tornado, earthquake or other casualty in such a way that the aggregate assessed value of the area has been materially depreciated.
At the time of the 1992 adoption of the LRHL, then, this much may be gleaned from the statutory evolution: while the focus on residential slums remained substantially unchanged, the Legislature had recognized, as early as 1951, that the concept of blight also embraced the total unproductivity of unimproved vacant land and that commercial blight embraced not only economic deterioration in tax revenue terms but also all the adverse physical conditions of property that individually or in combination impeded its reasonable productivity and resulted in its *259 negative impact upon the general welfare and economic well-being of the community. Consequently, an area in which such properties predominated and which established its general character was eligible for the blight declaration. That, in our view, is the clear import of paragraphs (c), (d), and (e) of the 1951 amendment, which remained intact until the statute's repeal in 1992. See, e.g., Levin v. Tp. Committee of Tp. of Bridgewater, 57 N.J. 506, 537-538, 274 A.2d 1, appeal dismissed, 404 U.S. 803, 92 S.Ct. 58, 30 L. Ed.2d 35 (1971), reiterating that:
the legislative purpose is not confined to the elimination of "perceptually offensive slums." The specific provisions of subsection (e) of the Blighted Area Act, N.J.S.A. 40:55-21.1, of the Local Housing and Redevelopment Agencies Acts, as well as the declarations of policy contained therein, reveal a much broader aim. That aim is the redevelopment of areas that qualify as blighted so as to restore or to apply them to uses which will serve the community benefit. More specifically, the Legislature recognized that at times, usually over a long period, potentially useful land reaches a stage of stagnation and unproductiveness through one or more causes. Consequently, it declared that where parcels of vacant land are characterized by lack of proper utilization resulting from obsolete platting, diversity of ownership, retardation or arrest of development of the lots for the purposes originally planned because of lack of demand for that use and where such conditions have resulted in tax delinquents and widespread acquisition of good or doubtful title in the municipality, the area is blighted. The Legislature, therefore, authorized the revitalization of the area so that it could be made to serve the community welfare, and it sanctioned remedial action either by the municipality alone or with the aid of private developers or by private development alone. N.J.S.A. 40:55-21.10.
In comparing the repealed N.J.S.A. 40:55-21.1 with the definitional provisions of the LRHL, N.J.S.A. 40A:12A-5, it becomes immediately evident that the fundamental differences between them are cosmetic only. Their substantive provisions as well as their structure and verbiage are virtually identical. Thus, in the introductory clause of N.J.S.A. 40A:12A-5, the word "blight" has been banished, replaced by "in need of redevelopment." The only change made by paragraph (a) of the 1992 Act in its 1951 counterpart was the elimination of the reference to dwellings and the addition of unwholesome working as well as living conditions, making clear that the described conditions were not to be limited to residential properties only. The only change made by paragraph (b), which addresses discontinuance of use, was the addition of commercial as well as manufacturing or industrial purposes to which the property had originally been put. The only change made by paragraph (c) was the addition of public lands. The only change made by paragraph (d), one of the provisions at the heart of this controversy, was the elimination of the parenthetical reference to "slum areas." Moreover, paragraph (e) of N.J.S.A. 40A:12A-5, here implicated as well, also made virtually no change in its N.J.S.A. 40:55-21.1 counterpart. Paragraph (f) too is virtually identical to the prior provision, and only paragraph (g), relating to enterprise zones was added as a new provision.[4]
*260 We have engaged in this recitation of legislative history in response to plaintiffs' core argument that the municipal action here was in derogation of the constitutional "blight" imperative. We agree with plaintiffbut so do defendantsthat the Constitution permits the undertaking of public redevelopment only if the area so designated is blighted. But cf. Wilson v. Long Branch, 27 N.J. 360, 371, 142 A.2d 837, cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L. Ed.2d 104 (1958), suggesting that the police power alone may constitute adequate authority for at least some types of redevelopment. In any event, the Legislature's implementation of the undefined constitutional blight mandate contained in the multi-faceted definition of blight set forth in the 1951 amendment of The Blighted Area Act has not been successfully challenged on the basis of constitutional non-conformance, overstatement or overbreadth for more than forty years preceding the LRHL. As noted by Wilson, supra, in sustaining the 1951 statutory blight definition:
Manifestly, the grant of power [accorded by the Constitution] contemplated development and implementation by the Legislature. Definition of blight was the ordinary and expected incident of the exercise of that power and no reasonable argument can be made that the connotation ascribed to it overreaches the public purpose sought to be promoted by the Constitution.

[27 N.J. at 381-382, 142 A.2d 837]
The 1951 statutory definition, moreover, clearly constituted and came to constitute a community consensus and expressed a common understanding of what is meant by blight subject to public remediation. See, e.g., Wilson, supra, 27 N.J. at 370, 142 A.2d 837, explaining that:
Community redevelopment is a modern facet of municipal government. Soundly planned redevelopment can make the difference between continued stagnation and decline and a resurgence of healthy growth. It provides the means of removing the decadent effect of slums and blight on neighboring property values, of opening up new areas for residence and industry. In recent years, recognition has grown that governing bodies must either plan for the development or redevelopment of urban areas or permit them to become more congested, deteriorated, obsolescent, unhealthy, stagnant, inefficient and costly.
*261 See also Levin, supra, 57 N.J. at 540, 274 A.2d 1.
It is of signal importance to our analysis here that the blight definition of the Blighted Area Act was virtually unchanged by the LRHL. Thus, the Legislature may have taken the word "blight" out of the statute in favor of the more euphemistic "area in need of development," and it may have taken the word "slum" out for the same euphemistic reason, but what is of paramount import is that the definitional standards were not changed in any material respect. Thus, an area, except for public lands or those located in enterprise zones, cannot, under the 1992 statute, be declared in need of redevelopment unless it meets exactly the same standards of blight required by the Blighted Area Act. The word "blight" may have been left out of the LRHL but the concept and long-standing definition of blight remain firmly fixed therein, and defendants themselves so understood. Thus to the extent any comment made by the trial judge in rendering his oral decision may be construed as suggesting that the 1992 Act "liberalized" the standards for designation of an area in need in development, we reject the notion. The area must be found to be blighted in conformance with the same standards as theretofore even though we no longer call it a blighted area but rather an area in need of redevelopment.
The question then remaining is whether there was substantial evidence before the trial judge supporting the municipal conclusion that the area of the central business district here in question met the statutory standard for designation. See N.J.S.A. 40A:12A-6b(5), reiterating the substantial evidence requirement of former N.J.S.A. 40:55-21.6. Relying, as did Judge Weiss, on the meticulously drawn resolutions and ordinances, the scrupulous adherence to the statute's procedural requirements, the series of professional planning reports, the community's views as they were expressed at public hearings, and the supplemental testimony, we are satisfied that the substantial evidence test was met.
As we have noted, what is in issue here is a central business district that, like many other urban and suburban business districts throughout this State, has suffered over the last decades from the fate of creeping deterioration as retail activity has become more and more concentrated in large shopping malls and the consequent loss of that economic vitality has made the center of town less and less attractive for other commercial uses. See, e.g., Jersey City Chapter v. City Council of Jersey City, 55 N.J. 86, 259 A.2d 698 (1969). There was certainly substantial evidence that the Village's central business district as a whole was becoming stagnant, deteriorated, obsolescent, and that its economic vitality was seriously declining. It was also clear that during the last ten years the Village has been taking significant steps to reverse that trend without recourse to redevelopment-area designation and adoption of a redevelopment plan. By the passage of bond ordinances, use of grants, and authorized cooperation with New Jersey Transit and private enterprise, it has already caused the substantial redevelopment of the railroad property and has improved streets, sidewalks, lighting, and parking in and around the central business district. It has worked with property owners to replace and modernize property facades. While these measures have evidently resulted in some revitalization of the central business district and have already reduced the number of vacancies along its main streets, many of the basic root problems remain, including unproductive and inaccessible rear areas of commercial properties fronting on the main streets, functionally obsolescent structures, diverse titles precluding consolidation of properties into adequate-sized lots, and the non-conforming residential uses scattered throughout the area. It was consequently the Village's conclusion that the planned and hoped-for turnaround of the central business district cannot be further accomplished without the comprehensive replanning and private-capital incentives possible only by resort to the LRHL. We agree with Judge Weiss, for the reasons stated by him, that the Village's proofs met the standards of N.J.S.A. 40A:12A-5(d) and (e). In sum, we reject plaintiffs' claim that what the Village did, in effect, was to impose its Utopian-like vision for the future of the central business district upon an area already reasonably productive and functioning successfully *262 in economic and planning terms. If that were so, plaintiffs would be entitled to relief. But the Village's finding that that was not the character of its central business district and that the central business district is in need of redevelopment as statutorily defined was not only widely endorsed by the community but was also supported by substantial evidence.
We address two further arguments of plaintiffs. First they challenge the Village's methodology of property inspection upon which the planning consultant's report was based. More specifically, they assert that her failure to inspect the interior of each of the premises rendered her findings fatally defective. We disagree essentially for the reasons stated by Judge Weiss. The conditions leading to the determination of redevelopment need pursuant to sections (d) and (e) are, by and large, externally observable, and these observations by the planner were given further substantive content by reason of her long familiarity, in her professional capacity, with all facets of the community. Plaintiffs also point out that a number of the residential units in the redevelopment area are in no way substandard. That may be true even though they are now non-conforming uses. The point, of course, is that not every property within the redevelopment area must be shown to be itself substandard. Inevitably, as the Supreme Court made clear in Lyons v. City of Camden, 52 N.J. 89, 97, 243 A.2d 817 (1968), some "good" properties will be drawn into the redevelopment area and prohibiting the municipality from so doing would obviously defeat the legislative purpose of area redevelopment. The issue is whether the area as a whole qualifies for the designation.
It is not for the courts to second guess the municipal action, which bears with it a presumption of regularity. We need not determine if we would have concurred in the designation but only if it is supported by substantial evidence. As Justice Francis explained in Lyons, supra, 52 N.J. at 98, 243 A.2d 817:
Clearly the extent to which the various elements that informed persons say enter into the blight decision-making process are present in any particular area is largely a matter of practical judgment, common sense and sound discretion. It must be recognized that at times men of training and experience may honestly differ as to whether the elements are sufficiently present in a certain district to warrant a determination that the area is blighted. In such cases courts realize that the Legislature has conferred on the local authorities the power to make the determination. If their decision is supported by substantial evidence, the fact that the question is debatable does not justify substitution of the judicial judgment for that of the local legislators.
The actions of the Village and its planning board met the substantial evidence test.
The judgment appealed from is affirmed.
NOTES
[1] At oral argument, we advised counsel that we were considering a site visit to the area and that, if we determined to do so, we would so inform them. We did in fact, on notice to counsel, make such a visit, not for the purpose of any fact-finding but only to enhance our understanding of the record.
[2] The session laws described that legislation as "an Act defining `blighted area,' authorizing municipalities to determine that areas are blighted areas, and to undertake the clearance, replanning, development and redevelopment of such areas."
[3] The totality of such legislation is listed in the repealer sections of L. 1992, c. 79, enacting the Local Redevelopment and Housing Law, namely, sections 56a and 59.
[4] The actual verbiage of the LRHL, N.J.S.A. 40A:12A-5, is as follows:

Conditions within delineated area establishing need for redevelopment
A delineated area may be determined to be in need of redevelopment if, after investigation, notice and hearing as provided in section 6 of P.L. 1992, c. 79 (C.40A:12A-6), the governing body of the municipality by resolution concludes that within the delineated area any of the following conditions is found:
a. The generality of buildings are substandard, unsafe, unsanitary, dilapidated, or obsolescent, or possess any of such characteristics, or are so lacking in light, air, or space, as to be conducive to unwholesome living or working conditions.
b. The discontinuance of the use of buildings previously used for commercial, manufacturing, or industrial purposes; the abandonment of such buildings; or the same being allowed to fall into so great a state of disrepair as to be untenantable.
c. Land that is owned by the municipality, the county, a local housing authority, redevelopment agency or redevelopment entity, or unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, and that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital.
d. Areas with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community.
e. A growing lack or total lack of proper utilization of areas caused by the condition of the title, diverse ownership of the real property therein or other conditions, resulting in a stagnant or not fully productive condition of land potentially useful and valuable for contributing to and serving the public health, safety and welfare.
f. Areas, in excess of five contiguous acres, whereon buildings or improvements have been destroyed, consumed by fire, demolished or altered by the action of storm, fire, cyclone, tornado, earthquake or other casualty in such a way that the aggregate assessed value of the area has been materially depreciated.
g. In any municipality in which an enterprise zone has been designated pursuant to the "New Jersey Urban Enterprise Zones Act," P.L.1983, c. 303 (C.52:27H-60 et seq.) the execution of the actions prescribed in that act for the adoption by the municipality and approval by the New Jersey Urban Enterprise Zone Authority of the zone development plan for the area of the enterprise zone shall be considered sufficient for the determination that the area is in need of redevelopment pursuant to sections 5 and 6 of P.L.1992, c. 79 (C.40A:12A-5 and 40A:12A-6) for the purpose of granting tax exemptions within the enterprise zone district pursuant to the provisions of P.L. 1991, c. 431 (C.40A:20-1 et seq.) or the adoption of a tax abatement and exemption ordinance pursuant to the provisions of P.L.1991, c. 441 (C.40A:21-1 et seq.). The municipality shall not utilize any other redevelopment powers within the urban enterprise zone unless the municipal governing body and planning board have also taken the actions and fulfilled the requirements prescribed in P.L.1992, c. 79 (C.40A:12A-1 et al.) for determining that the area is in need of redevelopment or an area in need of rehabilitation and the municipal governing body has adopted a redevelopment plan ordinance including the area of the enterprise zone.
L.1992, c. 79, § 5.