766 A.2d 803 (2001)
337 N.J. Super. 149
Mitchell HIRTH, Plaintiff-Appellant,
v.
CITY OF HOBOKEN, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 2000.
Decided February 15, 2001.
*805 Richard Seltzer, Hoboken, argued the cause for appellant.
Linda Sabat argued the cause for respondent (Murray, Murray & Corrigan, attorneys; Ms. Sabat, of counsel and on the brief; William E. Denver, on the brief).
Before Judges SKILLMAN, CONLEY and LESEMANN.
*804 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This appeal involves a challenge to a City of Hoboken ordinance which adopted a redevelopment plan for a section of the City.
In 1997, the Hoboken City Council adopted a resolution which authorized the Planning Board (Board) to conduct a preliminary investigation of an industrial area in the northwest section of the City to determine whether the area was "in need of redevelopment" (sometimes referred to in this opinion as "blighted"),[1] and if so, to prepare a redevelopment plan in accordance with the Local Redevelopment and Housing Law (Local Redevelopment Law), N.J.S.A. 40A:12A-1 to -63. Pursuant to this authorization, the Board contracted with its planning consultant, Elizabeth Vandor, to study that area of Hoboken.
On April 17, 1998, Vandor submitted a report which concluded that part of the northwest section of Hoboken is blighted because it is "suffering from a substantial degree of long-standing vacancy of land, commercial and industrial building abandonment, lack of maintenance and a general sense of stagnancy and under-utilization." *806 The report identified specific blocks or parts of blocks, covering a twenty-four block area approximately seventy-two acres in size, as in need of redevelopment.
On April 29, 1998, the Board held a public hearing concerning Vandor's findings and recommendations, and on May 5, 1998, it essentially adopted her recommendations concerning the proposed boundaries of the redevelopment area.
On May 5, 1998, Vandor also submitted a second report, entitled "Northwest Redevelopment Plan," which set forth proposals for revitalization of the area in need of redevelopment. This report states that the redevelopment plan
attempts to improve the city's tax base, create locations for new job opportunities of a type which are currently in demand, allow a limited amount of enlargement of existing non-residential uses where it is related to job expansion, create a reasonable level of residential density tied directly to provision of parking ... create opportunities for large-scale retail (such as supermarkets), and encourage development of much needed public parking garages.
That same day, Vandor explained the contents of the redevelopment plan to the Board at an executive session. Following her presentation, the Board adopted a resolution which recommended that the City Council adopt the redevelopment plan.
On May 6, 1998, the City Council introduced an ordinance adopting the Northwest Redevelopment Plan and held an executive session at which Vandor outlined the contents of her two reports. On May 20, 1998, the City Council held a public hearing concerning the proposed redevelopment plan. At the conclusion of that hearing, the Council passed the ordinance adopting the redevelopment plan and amended the municipality's zoning map to incorporate the zoning changes set forth in the plan.
The redevelopment plan creates three zoning districts within the area in need of redevelopment. Residential uses are permitted in zones one and two, but not in zone three. The permitted uses in zone three include both large and small scale retail stores, restaurants, and professional and business offices.
The property plaintiff has contracted to purchase is located in zone three. The contract of sale "is expressly contingent upon the Buyer obtaining all necessary approvals and permits from any appropriate governmental agency to construct 80 residential units."
On July 10, 1998, plaintiff brought this action in lieu of prerogative writs challenging the validity of the Northwest Redevelopment Plan. Plaintiff claimed that zoning the property he has contracted to purchase solely for non-residential use was "arbitrary and capricious." Plaintiff also claimed that this zoning resulted in an unconstitutional "taking."
The case was brought before the trial court by the City's motion for summary judgment, which was supported by a statement of uncontroverted facts, the certifications of the City Clerk and Board Secretary, Vandor's report recommending designation of part of the City's northwest section as in need of redevelopment, and the municipal ordinance adopting the redevelopment plan. However, the City submitted to the trial court only limited excerpts of the transcripts of the hearing before the Board and none of the transcripts of the hearing before the City Council.
In opposition to the motion, plaintiff submitted a report by Peter G. Steck, a planning consultant, which concluded, among other things, that the zoning of plaintiff's property is "arbitrary, capricious and unreasonable."
The trial court granted Hoboken's motion for summary judgment. The court ruled that plaintiff does not have standing to challenge either Hoboken's blight determination or the redevelopment plan, because he did not file a "written objection" *807 with the Board, as provided by N.J.S.A. 40A:12A-6b(7). In the alternative, the court rejected plaintiff's challenges to the blight determination and redevelopment plan on their merits. The court found that Vandor's report provided "substantial evidence" that "the area in question is, in fact, `blighted' within the meaning of N.J.S.A. 40A:12A-5." The court also ruled that the placement of plaintiff's property in zone three was not arbitrary and capricious, and that "[t]he fact that plaintiff was not afforded the use he desired, i.e. residential use, does not constitute a taking."
We conclude that the trial court erred in ruling that plaintiff does not have standing to bring this action because he failed to file a written objection to the blight determination and redevelopment plan. Nevertheless, the court correctly concluded that the blight determination is valid, and plaintiff is not entitled to a plenary hearing to contest that determination. However, the court erred in granting summary judgment dismissing plaintiff's challenge to the part of the redevelopment plan which rezones the property he has contracted to purchase solely for non-residential uses.

I
Preliminarily, we note that the trial court erred in considering the merits of plaintiff's challenge to the blight determination without reviewing the full record of proceedings before the Board and City Council. In an action in lieu of prerogative writs challenging a blight determination, the trial court must decide whether the determination is "supported by substantial evidence." N.J.S.A. 40A:12A-6b(5). To make this decision, the court must review the complete record of proceedings in which evidence was presented supporting the blight determination.
A motion for summary judgment is not ordinarily the appropriate vehicle for development of that record. Rather, "[t]he normal procedure for submitting the record of proceedings before a local agency to the Law Division is through a pretrial conference, which is mandatory in all actions in lieu of prerogative writs." Willoughby v. Planning Bd. of Township of Deptford, 306 N.J.Super. 266, 274, 703 A.2d 668 (App.Div.1997).
Because Hoboken's claim that plaintiff lacks standing to challenge the blight determination and redevelopment plan is a purely legal claim that could be decided without review of the administrative record, this claim was properly brought before the court by a motion for summary judgment supported by limited excerpts of the record developed before the Board and City Council. See id. at 275, 703 A.2d 668. However, the trial court should not have ruled upon plaintiff's claim that the blight determination and redevelopment plan are arbitrary and capricious without reviewing the complete administrative record, including transcripts of the relevant proceedings before the Board and City Council.
When we became aware that the trial record was incomplete, we directed the parties to submit the transcripts of the Board and City Council proceedings to this court. We have now reviewed those transcripts and are satisfied that they could not have any effect on the trial court's decision that the blight determination is valid. Therefore, we affirm that decision. However, because we conclude that the trial court erred in dismissing plaintiff's challenge to the rezoning component of the redevelopment plan, and that that part of the case must be remanded, the court should consider the relevant portions of those transcripts in reviewing the plan.

II
The trial court's conclusion that plaintiff lacks standing to challenge the blight determination and redevelopment plan was based on N.J.S.A. 40A:12A-6b(7), which provides in relevant part:

*808 If a person who filed a written objection to a determination by the municipality pursuant to this subsection shall, within 45 days after the adoption by the municipality of the determination to which the person objected, apply to the Superior Court, the court may grant further review of the determination by procedure in lieu of prerogative writ....
The court concluded that under this section, the filing of a "written objection" to a blight determination with the planning board is a precondition to bringing an action in lieu of prerogative writs challenging that determination.
Initially, we note that even if the trial court's interpretation of N.J.S.A. 40A:12A-6b(7) were correct, plaintiff would not be foreclosed from challenging the redevelopment plan. N.J.S.A. 40A:12A-6b(7) applies only to a blight determination, not to the adoption of a redevelopment plan, and N.J.S.A. 40A:12A-7, which governs adoption of a redevelopment plan, does not contain any provision comparable to N.J.S.A. 40A:12A-6b(7). Therefore, there is no basis for questioning plaintiff's right to challenge the redevelopment plan.
In any event, we conclude that N.J.S.A. 40A:12A-6b(7) does not preclude plaintiff from challenging the blight determination solely because he failed to file a written objection with the planning board. This provision must be read in conjunction with the preceding subsections of N.J.S.A. 40A:12A-6. N.J.S.A. 40A:12A-6b(4) provides that at a hearing before a planning board on a proposed blight determination, "[a]ll objections to such a determination and evidence in support of those objections, given orally or in writing, shall be received and considered and made part of the public record." N.J.S.A. 40A:12A-6b(5) provides that "[n]otice of the determination shall be served, within 10 days of the determination, upon each person who filed a written objection thereto...." N.J.S.A. 40A:12A-6b(6) provides that "[i]f written objections were filed in connection with the hearing, the municipality shall, for 45 days next following its determination to which the objections were filed, take no further action to acquire any property by condemnation within the redevelopment area." Thus, N.J.S.A. 40A:12A-6b(4),(5) and (6) give party status before the planning board to a person who has filed written objections to a proposed blight determination and provide for an automatic forty-five day stay of condemnation proceedings within the redevelopment area to afford an objector the opportunity to file an action challenging the blight determination. N.J.S.A. 40A:12A-6b(7) complements these provisions by explicitly recognizing an objector's right to challenge a blight determination by an action in lieu of prerogative writs. However, it does not expressly state that a party who failed to file a written objection to a proposed blight determination is prohibited from seeking judicial review, and we see no reason why N.J.S.A. 40A:12A-6b(7) should be construed to impose such a prerequisite to a party's right to judicial review.
In this State, the right to seek judicial review of administrative action is of constitutional dimension. The New Jersey Constitution provides that "review, hearing and relief" of administrative action may be obtained in the Superior Court "as of right." N.J. Const. art. VI, § 5, ¶ 4; see Ward v. Keenan, 3 N.J. 298, 303-08, 70 A.2d 77 (1949). Our Supreme Court has recognized that "this right to seek judicial review of administrative decisions inheres not only in those who are direct parties to the initial proceedings before an administrative agency ... but also belongs to all persons who are directly affected by and aggrieved as a result of the particular action sought to be brought before the courts for review." Elizabeth Fed. Sav. & Loan Ass'n v. Howell, 24 N.J. 488, 499-500, 132 A.2d 779 (1957). Moreover, this right extends to all forms of administrative action, including "quasi-legislative" and "municipal" action. Id. at 501, 132 A.2d 779.
*809 In view of the constitutional foundation of the right to judicial review of administrative action, our courts are reluctant to foreclose such review on procedural grounds such as lack of standing. See id. at 499-504, 132 A.2d 779. One reason for this reluctance is that judicial review of administrative action may serve not only the private interests of the appellant but also broader public interests. See id. at 502-03, 132 A.2d 779; see also SMB Assocs. v. New Jersey Dept. of Envtl. Prot., 137 N.J. 58, 61-62, 644 A.2d 558 (1994). Therefore, in the absence of an explicit legislative declaration that a party must file an objection with the planning board to be entitled to judicial review, we do not believe N.J.S.A. 40A:12A-6b(7) should be construed to preclude plaintiff from challenging the blight determination affecting the property he has contracted to purchase.

III
Next we consider the trial court's conclusion that the City's blight determination was valid. The Local Redevelopment Law provides that before "[a] delineated area may be determined to be in need of redevelopment... the governing body of the municipality" must find at least one of the conditions set forth in N.J.S.A. 40A:12A-5. Those conditions include "[t]he discontinuance of the use of buildings previously used for commercial, manufacturing, or industrial purposes; the abandonment of such buildings; or the same being allowed to fall into so great a state of disrepair as to be untenantable[,]" N.J.S.A. 40A:12A-5b, and "[a] growing lack or total lack of proper utilization of areas ..., resulting in a stagnant or not fully productive condition of land potentially useful and valuable for contributing to and serving the public health, safety and welfare." N.J.S.A. 40A:12A-5e. Moreover, "[a] redevelopment area may include lands, buildings, or improvements which of themselves are not detrimental to the public health, safety or welfare, but the inclusion of which is found necessary, with or without change in their condition, for the effective redevelopment of the area of which they are a part." N.J.S.A. 40A:12A-3; see Forbes, supra, 312 N.J.Super. at 531, 712 A.2d 255 (stating that "not every property within the redevelopment area must be shown to be itself substandard.").
Judicial review of a blight determination is limited to whether it is "supported by substantial evidence...." N.J.S.A. 40A:12A-6b(5). Consequently, a governing body's decision that an area is blighted is "invested with a presumption of validity[,]" Levin v. Township Comm. of Township of Bridgewater, 57 N.J. 506, 537, 274 A.2d 1, appeal dismissed, 404 U.S. 803, 92 S.Ct. 58, 30 L.Ed.2d 35 (1971), and courts should not "second guess the municipal action[.]" Forbes, supra, 312 N.J.Super. at 532, 712 A.2d 255.
Because the public hearing before the planning board required by N.J.S.A. 40A:12A-6a is quasi-legislative in nature, a party challenging a blight determination may be allowed to supplement the record developed at that hearing. See Lyons v. City of Camden, 48 N.J. 524, 533-35, 226 A.2d 625 (1967). However, the planning board hearing "is the place and time where ordinarily the basic record should be made." Levin, supra, 57 N.J. at 528, 274 A.2d 1. Therefore, a party objecting to a blight determination may not "willful[ly] withhold[ ] ... facts ... or willful[ly] fail[ ] to prepare for the Planning Board hearing in the expectation of obtaining a full de novo trial in the Law Division." Ibid.
In concluding that a substantial portion of the industrial area in the northwest section of Hoboken is blighted, the Board and City Council relied primarily upon the report of the Board's planning consultant, Elizabeth Vandor, which made the following pertinent findings:
At least nine of the blocks have substantial levels (greater than 75%) of undeveloped land which are unused or are used for parking or open storage or which *810 contain the remains of earlier building foundations. Some of the vacancy has been present for more than ten years. At least ten of the blocks have buildings that appear inactive or abandoned.
After examining the physical conditions of the subject area ... it can be stated that the area as a whole appears to be suffering from a substantial degree of long-standing vacancy of land, commercial and industrial building abandonment, lack of maintenance and a general sense of stagnancy and under-utilization....
The entire I-1 zone below 14th Street has suffered an erosion in its assessed valuation of 26% (more than $19,000,000) between 1990 and 1997. When the sites which have lost value are isolated from the total, the loss represents 31% of their assessed value....
To supplement the judgment as to general under-utilization of the study area, which has been zoned industrial since the city's first zoning ordinance, New Jersey Department of Labor statistics were examined as to manufacturing jobs....
The city was once a manufacturing powerhouse with more than 15,000 manufacturing jobs in 1966. This has declined to around 2,000 in 1996. Hudson County has experienced a similar if slightly less dramatic decline and [the Department of Labor] projected that the county will lose an additional 30% of its manufacturing jobs between 1994 and 2005.
Vandor also made detailed block-by-block findings concerning the condition of buildings in the proposed redevelopment area and the nature and level of the economic activity being conducted there. She made the following specific findings concerning the property plaintiff has contracted to purchase:
Located on the south end of the block, these lots are occupied by a one-story warehouse that is in poor condition and appears unused. Exposed loading docks face Madison Street, covered by a metal canopy. A brick facade exists on half of the structure along Eleventh Street, and continues around the corner of Jefferson Street. The building is not maintained and appears abandoned. The building is surrounded by unpaved land that is also unused. The unpaved land was also undeveloped on the 1984 Sanborn Map indicating more than 10 years of disuse.
These lots meet the criteria of the blight investigation study.
Vandor summarized and expanded upon these findings at the hearing before the Board. None of the members of the public who spoke at the hearing disputed her basic findings concerning the area that the Board and City Council subsequently determined to be blighted.
Vandor's report and testimony before the Board provided the "substantial evidence" required by N.J.S.A. 40A:12A-6b(5) to support a blight determination. The report finds that some properties in the redevelopment area have been "abandoned" or are not being devoted to any productive use, and that many other properties are not being properly utilized, thus resulting in economic stagnation. Therefore, these findings establish "conditions" which, under N.J.S.A. 40A:12A-5b and e, justify a determination that an area is blighted.
As previously noted, a party may not simply withhold presentation of evidence to the planning board and then seek a full de novo trial in the Law Division concerning a blight determination, Levin, supra, 57 N.J. at 528, 274 A.2d 1, which is the course plaintiff followed in this case. In any event, the expert report prepared by Peter G. Steck, which plaintiff relied upon in opposing Hoboken's motion for summary judgment, did not question the validity of the blight determination. Steck's report was directed solely at the redevelopment plan, especially the zoning component which excludes plaintiff's *811 property from the two zones in which residential uses are permitted.
The only evidence plaintiff presented in opposition to the blight determination was his own certification, which asserted in conclusionary terms that "[a]lthough the use of many of the buildings in the area was previously for manufacturing or industrial purposes, those buildings have not been abandoned or fallen in so great a state of disrepair as to be considered substandard or unsafe." However, plaintiff's certification did not dispute that many buildings in the proposed redevelopment area are not currently being used in a productive manner, resulting in economic stagnation, which N.J.S.A. 40A:12A-5e specifically identifies as a "condition" that justifies a determination that an area is in need of redevelopment. See Levin, supra, 57 N.J. at 537-38, 274 A.2d 1 (noting that a provision similar to 5e was added to the predecessor to the Local Redevelopment Law in recognition of the fact that "at times, usually over a long period, potentially useful land reaches a stage of stagnation and unproductiveness through one or more causes" that may warrant adoption of a redevelopment plan). Therefore, the trial court correctly determined that the blight determination is valid, and that plaintiff is not entitled to a plenary hearing to contest that determination.

IV
When an area is found to be blighted, the adoption of a redevelopment plan is an independent municipal action which is governed by separate provisions of the Local Redevelopment Law. See Housing Auth. of City of Newark v. Ricciardi, 176 N.J.Super. 13, 21, 422 A.2d 78 (App.Div.1980). N.J.S.A. 40A:12A-7a provides that a redevelopment plan must be "adopted by ordinance" and "shall include an outline for the planning, development, redevelopment, or rehabilitation of the project area[.]" The redevelopment plan must indicate "[p]roposed land uses" for "the project area[,]" N.J.S.A. 40A:12A-7a(2), which "supersede applicable provisions of the development regulations of the municipality or constitute an overlay zoning district within the redevelopment area." N.J.S.A. 40A:12A-7c. Thus, one component of a redevelopment plan is the zoning or rezoning of the redevelopment area.
The Local Redevelopment Law also provides that "[n]otwithstanding the provisions of the `Municipal Land Use Law' P.L.1975, c. 291 (C.40:55D-1 et seq.) or of other law, no notice beyond that required for adoption of ordinances by the municipality shall be required for the hearing on or adoption of the redevelopment plan or subsequent amendments thereof." N.J.S.A. 40A:12A-7c. Thus, the procedures of the Municipal Land Use Law do not apply to adoption of a redevelopment plan, including the zoning component.
However, the Local Redevelopment Law contains its own procedures for adoption of a redevelopment plan. The governing body may propose a redevelopment plan and refer it to the planning board for its review. N.J.S.A. 40A:12A-7e. Alternatively, the governing body may direct the planning board to prepare a plan for the governing body's review, N.J.S.A. 40A:12A-7f, which is the procedure the Hoboken City Council followed in this case.
Under either procedure, the only hearing required before adoption of a redevelopment plan, as with any other municipal ordinance, is a legislative hearing before the governing body. See N.J.S.A. 40:49-2b. Consequently, if an action is brought challenging a redevelopment plan, there ordinarily is no administrative record other than whatever report the planning board may have submitted to the governing body and a transcript of the quasi-legislative hearing before the governing body. Thus, plaintiff's challenge to the validity of the redevelopment plan, specifically the rezoning of the property he has contracted to purchase, is governed by *812 the same procedures that would govern any other challenge to the validity of a municipal ordinance.
At a hearing before a governing body concerning the proposed adoption of a municipal ordinance, there is no requirement that evidence be presented providing a factual foundation for the ordinance, and the governing body does not ordinarily make any findings of fact to justify its action. See Gardens v. City of Passaic, 130 N.J.Super. 369, 377-78, 327 A.2d 250 (Law Div.1974), aff'd o.b., 141 N.J.Super. 436, 358 A.2d 805 (App.Div. 1976). Consequently, an action in lieu of prerogative writs challenging the validity of an ordinance is subject to different procedures than an action challenging the quasi-judicial action of a municipal agency. If quasi-judicial action is challenged, the court's decision "must be based solely on the agency record," which the court reviews to determine whether the agency's "factual findings are based on `substantial evidence' and whether its discretionary decisions are `arbitrary, capricious and unreasonable.'" Willoughby, supra, 306 N.J.Super. at 273-74, 703 A.2d 668. In contrast, if an action is brought challenging the validity of an ordinance, and resolution of the challenge turns on disputed factual issues, the case must proceed in the same manner as other civil litigation, with an opportunity for discovery, pretrial motions and a trial. See Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 292, 456 A.2d 390 (1983). Therefore, if a municipality seeks summary judgment dismissing a complaint challenging the validity of an ordinance, it has the same burden as any other civil litigant to show that "there is no genuine issue as to any material fact" and that it "is entitled to ... judgment ... as a matter of law." R. 4:46-2(c); see Mitchell v. City of Somers Point, 281 N.J.Super. 492, 500, 658 A.2d 1276 (App.Div.1994).
Hoboken failed to show the absence of any material issue of fact concerning the validity of the part of the redevelopment plan which rezones the property plaintiff has contracted to purchase. Hoboken's moving papers did not include documentary evidence or an affidavit by any person involved in the formulation of the redevelopment plan explaining why plaintiff's property was placed in zone three, where residential uses are prohibited, rather than zones one or two, where residential uses are permitted. Instead, Hoboken simply relied upon the "presumption of validity" of municipal action and asserted that plaintiff had not presented evidence which could support a finding that the redevelopment plan was "arbitrary, capricious or unreasonable."
However, in opposing the motion for summary judgment, plaintiff presented a report prepared by its expert, Peter G. Steck, which asserted that the redevelopment plan creates "illogical land use patterns," and thus is arbitrary and capricious, especially as it affects the zoning of the property plaintiff has contracted to purchase:
An analysis of the Zone 3 in relation to other zones reveals an illogical pattern with respect to other zones and with respect to established planning principles. Firstly, it is observed that the Zone 3 areas between Eleventh and Twelfth Streets and between Thirteen and Fourteen Streets are all under 40,000 square feet and consequently do not permit large scale retail uses such as supermarkets or shopping centers. Only one of the seven R-3 Zones accommodates a lot over 40,000 square feet the R-3 Zone south of Seventh Street. Hence, for the subject property and five other R-3 Zones, the uses permitted include only a selected number of I-1 Zone uses and small scale retail uses but no residential use.
Steck also observed that "[i]t is a generally accepted planning principle that retail uses frame both sides of a street[,]" but that "the pattern of zone 3 in the Redevelopment Plan generally ignores this land use principle." Steck concluded that the "illogical *813 land use patterns endorsed by the Northwest Redevelopment Plan yield a conclusion that the zoning standards in the Plan are arbitrary, capricious and unreasonable and confiscatory especially with respect to the subject property."
It appears from our review of the transcripts of the hearings before the Board and City Council that residential uses were prohibited on the property plaintiff has contracted to purchase to establish a buffer zone between commercial and residential uses and to preserve unimpeded traffic flow for trucks entering and leaving a chemical plant on an adjoining property. However, because Hoboken failed to submit those transcripts with its motion for summary judgment, plaintiff's expert was not afforded an opportunity to comment upon these apparent justifications for the zoning, and the trial court was not even aware that those were the justifications. Therefore, the record before the trial court did not justify a summary judgment dismissing plaintiff's challenge to the rezoning of the property he has contracted to purchase.
Accordingly, the part of the summary judgment dismissing plaintiff's challenge to Hoboken's determination that the industrial area in the northwest section of the City is in need of redevelopment is affirmed. The part of the summary judgment rejecting plaintiff's challenge to the redevelopment plan is reversed, and the case is remanded to the trial court for further proceedings in conformity with this opinion.
NOTES
[1] The Local Redevelopment Law substitutes the term "in need of redevelopment," N.J.S.A. 40A:12A-5, for the term "blighted" that had been used in prior legislation. See N.J.S.A. 40A:12A-6c (stating that "[a]n area determined to be in need of redevelopment pursuant to this section shall be deemed to be a `blighted area' for the purposes of Article VIII, Section III, paragraph 1 of the Constitution."); Forbes v. Board of Trustees of South Orange Village, 312 N.J.Super. 519, 526, 712 A.2d 255 (App.Div.) certif. denied, 156 N.J. 411, 719 A.2d 642 (1998). These terms are used interchangeably in this opinion.