885 A.2d 512 (2005)
381 N.J. Super. 268
ERETC, L.L.C., a Limited Liability Company of the State of New Jersey, Plaintiff-Appellant,
v.
CITY OF PERTH AMBOY, a Municipal Corporation of the State of New Jersey, Municipal Council of the City of Perth Amboy, and Planning Board of the City of Perth Amboy, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 2005.
Decided November 15, 2005.
*513 Dennis M. Galvin, Jackson, argued the cause for appellant (The Galvin Law Firm, attorneys; Erin E. Kurowicki and Mr. Galvin, on the brief).
Victor A. Afanador, Newark, argued the cause for respondents City of Perth Amboy and the Municipal Council of the City of Perth Amboy (Lite, DePalma, Greenberg & Rivas, attorneys; Mr. Afanador, on the brief).
George S. Szetela, Fords, argued the cause for respondent Planning Board of the City of Perth Amboy.
Before Judges FALL, PARKER and GRALL.
The opinion of the court was delivered by
PARKER, J.A.D.
In this action in lieu of prerogative writs, plaintiff ERETC, L.L.C. (ERETC) appeals from a final judgment, entered in the Law Division after a non-jury trial, dismissing the complaint challenging the inclusion of plaintiff's property in an area designated as one in need of redevelopment pursuant to the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -73, by defendants, City of Perth Amboy (City), the Municipal Council of the City of Perth Amboy (Council) and the Planning Board of the City of Perth Amboy (Planning Board). The following procedural and factual history is relevant to our consideration of the issues presented on appeal.
On April 25, 2001, the Council adopted a resolution directing the Planning Board to conduct a preliminary investigation of underutilized areas in designated sections of the city to determine whether those areas were in need of redevelopment pursuant to N.J.S.A. 40A:12A-6.[1] The Council further authorized the Planning Board to prepare a redevelopment plan for those designated areas.
Plaintiff, ERETC, owns a light manufacturing building located on Sayre Avenue in designated Area 1-7 of the proposed redevelopment area. ERETC uses part of the building for its own business and rents the remainder to commercial tenants. The building is in good condition and is 65 to 75% occupied. Approximately 345 people are employed in the building, 75 to 80% of whom live within a five to eight mile radius. Leon Zelcer, a principal of ERETC, was present for and participated in the Planning Board's proceedings on the redevelopment area.
The Planning Board commissioned Helga Crowley, the Executive Director of the Perth Amboy Redevelopment Agency (PARA), to publish notice for a public hearing regarding the proposed redevelopment areas 1, 2 and 3. On June 7, 2001, Crowley faxed a legal notice for the Planning Board's June 25, 2001 hearing to the Home News Tribune newspaper, which circulates in the City and throughout Middlesex County, and the notice was published on June 9, and June 16, 2001. Legal notice was provided to all owners of property within the proposed redevelopment areas via certified mail. Zelcer acknowledged *514 receiving a copy of the notice in the mail before June 15.
The Planning Board designated Michael T. Carr, the City's Planner, to study the proposed areas. On June 15, 2001, Carr submitted a preliminary statement which purportedly provided an initial analysis of whether the statutory criteria of N.J.S.A 40A:12A-5 justified redevelopment in those areas. The statement was intended to assist the public in participating in the hearing process.
In his preliminary report, Carr reevaluated the City's Focus 2000 Redevelopment Plan and noted that "[t]he City is specifically considering the inclusion of properties which are immediately north to the existing Area 1." The proposed expansion of the designated area included plaintiff's property. Carr stated the purpose of the investigation:
The City of Perth Amboy is 94% developed, as based upon the 1990 Master Plan. However, over the past two decades the City's former industrial base has diminished, leaving abandoned, environmentally impaired and/or underutilized properties behind. Therefore, the only significant opportunity for revitalization of the City is through the redevelopment of underutilized land mass. The challenge of the City of Perth Amboy is to provide incentive to property owners to bring these sites to market. The resulting benefits of the City's redevelopment initiatives will include optimal use of available lands, the removal of blight from the City's landscape, and the creation of new jobs and new tax ratables.
Carr's preliminary report included maps and a brief description of the proposed areas. The report recited the statutory criteria for establishing redevelopment areas and a "Preliminary Application of Criteria to Proposed Areas." With respect to Proposed Area 1-7, Carr stated:
[D]ue to the land and nature of development, there has been an excessive amount of land coverage and deleterious land use, with insufficient layout. Also, the area consists of a diverse ownership of real property which will create a growing lack of property utilization and not a fully productive condition of land potentially useful and valuable for contributing to serving the public health, safety and welfare.
Therefore, criteria D & E [of N.J.S.A. 40A:12A-5] apply to this area.
On June 25, 2001, ten days after Carr submitted the preliminary report, the Planning Board conducted a public hearing on the areas proposed for redevelopment. The stated purpose of the meeting was "to listen to any comments and suggestions that may be put forward" regarding potential redevelopment and for the Board to "hold [a] public hearing and make recommendations to the City Council." At the meeting, the Planning Board addressed the expansion of the redevelopment area.
Zelcer participated in the meeting, asking questions and exchanging views with Planning Board members. Leah Healey, attorney for the Redevelopment Agency, responded to Zelcer's question as to how the redevelopment plan would effect the ERETC property by stating that the City would undertake a two-step process:
First we must investigate the area and that's what this Board does. This Board then makes a recommendation about whether or not the area meets the criteria to the City Council. It is that body that will then determine ultimately what areas are adopted as redevelopment areas. And once that step is taken and... concurrently with this step, then, which is some comment that the Mayor is eliciting through the audience members, *515 what redevelopment would enhance that area, what types of uses should be encouraged to come to that area and that ultimately ends up in an actual overall plan for the redevelopment area.
Based upon citizen input at the June 25, 2001 meeting, the Planning Board directed Carr to prepare a second and "Final Statement Setting Forth Basis for Investigation of Proposed Redevelopment Areas" (Final Statement), dated July 24, 2001. The final report indicated that all of the proposed areas were in need of redevelopment except for certain residential properties in Area 1. Carr evaluated the tax assessor's records, tax collector's records, building department records, Division of Engineering files, the Perth Amboy Zoning Ordinance and Master Plan, site plans, all variances and development construction applications, investigations and proposals for the City in preparing the Final Statement. The report stated the following with respect to proposed Area 1-7:
The proposed area consists of a mixed land use, consisting of residential, commercial and industrial [property]. The majority of properties fronting along New Brunswick Avenue and Convery Boulevard are commercial, with some residential uses. The properties along Sayre Avenue are commercial and industrial use, and the western portion of Sayre Avenue, is a multi-family residential use. The western portion of the project, bounded by McKeon Street, consists of residential and vacant commercial land.
The southernmost properties, directly adjacent existing redevelopment Area 1, satisfy the statutory criteria to be established as in need for redevelopment. This area includes property that is underutilized as a result of zoning constraints; buildings that are lacking proper [space] ventilation and have faulty/obsolete arrangement; and facilities that operate deleterious land use. Therefore, this area includes properties that meet Criteria A (Buildings that are substandard, unsafe, unsanitary, dilapidated, or obsolescent [sic] or possess any of such characteristic, or are so lacking in light, air, or space, as to be conducive to unwholesome living or working conditions), Criteria C (land that is owned by the municipality), Criteria D (facilities which by reason of faulty arrangement or design, lack of ventilation, deleterious land use, are detrimental to the safety, health, morals, or welfare of the community), and Criteria E (property that has a total lack of proper utilization of areas resulting in a stagnant or not fully productive condition of land potentially useful and valuable for contributing to serving the public health, safety, and welfare).
Carr concluded that Area 1-7 met the statutory criteria of N.J.S.A. 40A:12A-5.
No hearings were held after the July 25, 2001 Planning Board meeting, but on August 1, 2001, the Planning Board voted to adopt Carr's recommendation in the preliminary and final reports to redevelop Areas 1, 2 and 3. On September 12, 2001, the Council adopted a resolution accepting the Planning Board's recommendation and determining that the areas described in Carr's Final Statement are in need of redevelopment.
On October 24, 2001, plaintiff filed an action in lieu of prerogative writs challenging inclusion of the ERETC property in the proposed Area 1-7. At trial, Zelcer testified that the ERETC building is 65 to 75% occupied and could be fully occupied but for the City's requirement that potential tenants sign a letter acknowledging that they agree to move on demand. Zelcer testified further that the current tenants *516 have long-term leases, with six years remaining on the longest lease. Three hundred and forty-five individuals are employed in plaintiff's building, 75 to 80% of whom live within a five to eight mile radius. Zelcer noted that the building houses thriving businesses and has never been cited for code violations, except for overgrown weeds. ERETC has invested more than $300,000 to improve the building over the last five years, and one of the tenants, a manufacturer of hydraulic equipment, spent approximately $225,000 to install its equipment in the building. He noted that ERETC provides "a unique structure where small businesses can find a home ... in Perth Amboy" and the building's tenants are among the City's largest employers.
At trial, Eileen Banyra testified on behalf of plaintiff as an expert in the field of planning. She stated that she was retained to examine the property and proposed redevelopment plan and render an opinion as to whether plaintiff's property met the statutory criteria. Banyra testified that she examined plaintiff's property and found it to be neat, maintained and painted. She observed no apparent structural flaws. She also reviewed Carr's Final Statement, the City's zoning and land development ordinance, the tax records and a survey of the property. Based upon her review of the records and the property, she concluded that Carr's report was inadequate. She testified:
[I]n order for the governing body or for the Planning Board to make a finding, there needs to be substantial evidence. And what I found in terms of the report was a report that was inadequate and void of any information that would lead to the conclusion that was obtained by the City which was that the area was in need of redevelopment.
The report contained only cursory references to conditions. There were a number of pictures taken of the buildings. There was no site investigation, there were no tax records [ ] presented in the report. There was no quantitative information which is typical of these reports that was indicated in the findings of Mr. Carr.
So in terms of my findings, I felt that [Carr's report] lacked substantial evidence. It was really ait took the redevelop[ment] law out of context and it seemed to draw conclusions without substantiating those conclusions.
As a licensed planner, Banyra explained what she typically did in preparing a redevelopment report:
I go to the building department, I'll pull any building department files. We do sometimes a DEP [Department of Environmental Protection] search to see if the site is a brown field, is there anything that we need to know, is there any toxic information. We might look at maps called Sanborn Maps. The Sanborns are historical maps that have been used for fire [protection], so you could see what the previous land uses were, so that you could [see] even if there weren't [sic] contamination that showed up, you can sometimes tell from a Sanborn map that they date back to the early 1900s, what type of use is on the property and you could say, you know what, there may be contamination or at least underground tanks.
We normally contact police, fire, any kind of unusual reported activity, any fire calls, tax department. We'll go to the tax department, get values of property, we'll getis the value of the property increasing, is it decreasing. You know, that's standard documentation and our planning reports and pretty *517 much throughout the state, any of the planner's reports.
Banyra further noted that Carr's report merely recited the criteria in a conclusory fashion without tying it to the reasons the properties should be included in the redevelopment area. She observed that Carr recited a section of the statute and stated, for example, that a property was designated for redevelopment "by reason of dilapidation, obsolescence, overcrowding, or that there's some deleterious land use," referring to the language in N.J.S.A. 40A:12A-5(d).
You can't just say by reason of dilapidation you're in an area of redevelopment. You have to indicate how that's detrimental to the safety, health, morals, or welfare of a community. And in order to demonstrate that ... that's where the evidence comes into play.
That could have been demonstrated or possibly demonstrated through zoning violations, building code violations, [fire] reports, something of that nature. Again, that wasn't present in the report.
Banyra explained that the Planning Board must rely on its experts to present evidence that the statutory criteria for redevelopment has been met. Carr, however, provided "no substantiation of the criteria." She noted that the Department of Community Affairs (DCA) published guidelines for the preparation of redevelopment plans, but Carr's reports did not follow these guidelines.
Carr testified as the City's planning expert. He claimed that the information contained in his report was derived from his physical inspection of each site within Area 1-7. He inspected the buildings from the outside, contacted the tax assessor's office to determine whether there were any outstanding tax liens and contacted the code enforcement officers to determine whether there were any outstanding violations on any buildings in the area. He acknowledged that there were no tax liens or building violations for plaintiff's property. He never inspected the interior of the buildings, however, and did not know whether any indoor improvements had been made.
Crowley, the Executive Director of PARA, testified on behalf of defendants. She oversaw day-to-day operations of PARA and negotiated and monitored redevelopment agreements. PARA's goals were "to bring underdeveloped, underutilized properties back to productive use, revitalize the City and eliminate the properties that are of concern." Crowley testified that the City's plan for Area 1-7 included building a new school and relocating affordable housing areas. She noted that PARA owns property adjacent to plaintiff's property and that PARA's property contains "little shacks ... and some boat storage." She claimed that the buildings were "in poor condition" and that the City planned to demolish them. She considered plaintiff's property important to the redevelopment plan which included a mix of residential units for sale or lease, ranging from single-family to multi-dwelling buildings.
After hearing the testimony, the trial judge rendered a written opinion in which he noted that "Area 1, of which Area 1-7 is a part, was originally designated in 1997." He commented that "[m]unicipalities, at times, have dreams of grandeur and have high hopes of converting those dreams into reality" but he recognized that
when that dream encompasses such a large area it takes years, many years, to come to fruition, if at all. When the area gets painted with too broad a brush, the impact of such decisions sometimes has the opposite effect. As in this case, an affected property owner may have difficulty in renting its facility *518 because of the declaration of rehabilitation.
The judge noted that "[w]hen the Plaintiff bought the subject property it was 100% occupied; at the time of trial, occupancy was only 65%." He noted further that if the redevelopment project proceeds, "the property owners' damages can be considered at the time in the eminent domain proceeding. Of course[,] the problem arises when the municipality never elects to bring its dream to fruition."
The trial judge correctly applied the deferential standard in considering the municipality's action, limiting judicial review to a determination of "whether there existed substantial evidence to support a declaration that an area was in need of redevelopment." The court concluded that there was substantial evidence to support the City's findings and conclusions and that plaintiff did not meet its burden to warrant reversal.
In this appeal, plaintiff argues that (1) the trial court erred in concluding that Area 1-7 was in need of redevelopment; (2) inclusion of plaintiff's property, one of the City's largest employers, in the redevelopment plan is contrary to the public policy and goals of redevelopment; (3) the trial court erred in relying on Carr's report and testimony; and (4) the trial court erred in granting defendant's motion to dismiss count two of the complaint which alleges that the votes by the Planning Board and the Council "were taken with no discussion or explanation of why any of the sites were included"; the Planning Board failed to provide the public with an adequate statement of the basis for its investigation as required by the Redevelopment Law; and the Planning Board's resolution failed to disclose the evidence upon which the Board relied.
We first address the applicable standard of review. Redevelopment designations, like all municipal actions, are vested with a presumption of validity. Levin v. Twp. Comm. of Bridgewater, 57 N.J. 506, 537, 274 A.2d 1 (1971); Hirth v. City of Hoboken, 337 N.J.Super. 149, 161, 766 A.2d 803 (App.Div.2001). It has long been recognized that "community redevelopment is a modern part of municipal government." Levin, supra, 57 N.J. at 540, 274 A.2d 1 (citing Wilson v. Long Branch, 27 N.J. 360, 392, 142 A.2d 837, cert. denied, 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958)). Thus, judicial review of a redevelopment designation is limited solely to whether the designation is supported by substantial credible evidence. Levin, supra, 57 N.J. at 537, 274 A.2d 1. This heightened deference standard is codified in the LRHL, which provides that an "area in need of redevelopment"[2] designation "shall be binding and conclusive upon all persons affected by the determination" if it is "supported by substantial evidence and, if required, approved by the commissioner." N.J.S.A. 40A:12A-6(b)(5). Accordingly, it is not for the courts to "second guess" a municipal redevelopment action "which bears with it a presumption of regularity." Forbes v. Bd. of Trs., 312 N.J.Super. 519, 532, 712 A.2d 255 (App.Div.), certif. denied, 156 N.J. 411, 719 A.2d 642 (1998). As our Supreme Court stated in Lyons v. City of Camden, 52 N.J. 89, 98, 243 A.2d 817 (1968):
Clearly the extent to which the various elements that informed persons say enter into the blight decision-making process are present in any particular area is largely a matter of practical judgment, common sense and sound discretion. It must be recognized that at times men of *519 training and experience may honestly differ as to whether the elements are sufficiently present in a certain district to warrant a determination that the area is blighted. In such cases courts realize that the Legislature has conferred on the local authorities the power to make the determination. If their decision is supported by substantial evidence, the fact that the question is debatable does not justify substitution of the judicial judgment for that of the local legislators.

[Emphasis added.]
Thus, we will defer to the local legislators if their decision to designate areas in need of redevelopment is supported by substantial evidence. Levin, supra, 57 N.J. at 537, 274 A.2d 1; Jersey City Chapter of Prop. Owner's Protective Ass'n v. City Council, 55 N.J. 86, 101-102, 259 A.2d 698 (1969) (holding that summary judgment should have been granted where objectors did not tender any evidence before either the Planning Board or the Law Division that rebutted substantial evidence in support of redevelopment designation).
N.J.S.A. 40A:12A-5 authorizes designation of an area as in need of redevelopment if "any" of the "conditions" enumerated therein are found. The statute provides in pertinent part:
A delineated area may be determined to be in need of redevelopment if, after investigation, notice and hearing as provided in section 6 of P.L.1992, c. 79 (C.40A:12A-6), the governing body of the municipality by resolution concludes that within the delineated area any of the following conditions is found:
a. The generality of buildings are substandard, unsafe, unsanitary, dilapidated, or obsolescent, or possess any of such characteristics, or are so lacking in light, air, or space, as to be conducive to unwholesome living or working conditions.
b. The discontinuance of the use of buildings previously used for commercial, manufacturing, or industrial purposes; the abandonment of such buildings; or the same being allowed to fall into so great a state of disrepair as to be untenantable.
c. Land that is owned by the municipality, the county, a local housing authority, redevelopment agency or redevelopment entity, or unimproved vacant land that has remained so for a period of ten years prior to adoption of the resolution, and that by reason of its location, remoteness, lack of means of access to developed sections or portions of the municipality, or topography, or nature of the soil, is not likely to be developed through the instrumentality of private capital.
d. Areas with buildings or improvements which, by reason of dilapidation, obsolescence, overcrowding, faulty arrangement or design, lack of ventilation, light and sanitary facilities, excessive land coverage, deleterious land use or obsolete layout, or any combination of these or other factors, are detrimental to the safety, health, morals, or welfare of the community.
e. A growing lack or total lack of proper utilization of areas caused by the condition of the title, diverse ownership of the real property therein or other conditions, resulting in a stagnant or not fully productive condition of land potentially useful and valuable for contributing to and serving the public health, safety and welfare.
f. Areas, in excess of five contiguous acres, whereon buildings or improvements have been destroyed, consumed by fire, demolished or altered by the action of storm, fire, cyclone, tornado, *520 earthquake or other casualty in such a way that the aggregate assessed value of the area has been materially depreciated.
We have carefully considered the record in light of the applicable law and find that the City's decision was not supported by substantial evidence. The Planning Board relied almost exclusively on Carr's Final Statement. The report set forth the purpose of the investigation; maps and tables showing geographic locations of the areas and properties investigated; a recitation of the statutory criteria; and the proposed redevelopment plan. Nowhere in the report did Carr undertake an analysis of the statutory criteria as it applied to each of the properties in the designated Area 1-7.
In her testimony, Banyra correctly identified the type of analysis necessary for the Planning Board to make an informed decision on the proposed designated areas for redevelopment. Carr's Final Statement and testimony were conclusory and failed to include any evidence to support his determination that buildings were "substandard, unsafe, unsanitary, dilapidated, or obsolescent." N.J.S.A. 40A:12A-5(a). He acknowledged that he did not inspect the interiors of the buildings, did not review applications for building permits, did not review occupancy rates or the number of people employed in the area. He did no investigation into whether the properties were "properly utilized" or whether they were "fully productive" or "potentially useful and valuable for contributing to and serving the public health, safety and welfare." N.J.S.A. 40A:12A-5(e). For example, Carr made reference to neither the occupancy rate nor the number of local residents employed in plaintiff's buildings. His only negative finding was with reference to the "underutilized" parking lot on plaintiff's property, but he failed to investigate whether the employees utilized public transportation rather than drove their own vehicles to work.
The case law more than adequately articulates what constitutes "substantial evidence" for purposes of the LRHL. See, e.g., Lyons, supra, 52 N.J. at 95, 243 A.2d 817 (noting that the evidence included structure-by-structure inspections of the interior and exterior of each building within the proposed redevelopment area); Wilson, supra, 27 N.J. at 389-90, 142 A.2d 837 (noting that the city presented "the elaborate report of the planning consultant who made a study of the area with respect to blight," which included maps showing land use in the entire city, topography of the area, underdeveloped and underutilized land, the extent of blighting factors and tax delinquencies in the proposed area); and Hirth, supra, 337 N.J.Super. at 162-63, 766 A.2d 803 (noting that the planning board's consultant "made detailed block-by-block findings concerning the condition of buildings in the proposed redevelopment area and the nature and level of the economic activity being conducted there"). Carr's report contained none of the information included in the reports referenced in the cases cited above.
In our view, the evidence presented to the Planning Board, Council and trial court was not sufficient to sustain a finding that the properties included in Area 1-7 met the criteria set forth in N.J.S.A. 40A:12A-5. Absent substantial evidence, the City's decision to designate Area 1-7 as in need of redevelopment does not enjoy the deference generally accorded such findings. We, therefore, reverse and remand to the Planning Board for reconsideration of its decision in light of the foregoing. We have carefully considered plaintiff's remaining arguments and are *521 satisfied that we need not address them in light of our decision here.
Reversed and remanded.
NOTES
[1] N.J.S.A. 40A:12A-6 requires a municipality to undertake investigation before designating redevelopment areas.
[2] Areas in need of redevelopment were previously designated "blighted" areas under the Blighted Area Act, N.J.S.A. 40:55-21.1, repealed by L. 1992, c. 79, § 59.