994 A.2d 1054 (2010)
413 N.J. Super. 322
POWERHOUSE ARTS DISTRICT NEIGHBORHOOD ASSOCIATION, Plaintiff-Appellant, and
Marc N. Simon, Jill Edelman, Evan Gourvitz, Brian Gustafson, Charles Kessler, Thomas Grill, Richard James, Harsimus Cove Association, Richard Tomko, Kathryn Leonard, John Gomez, and Joshua Parkhurst, Plaintiffs-Respondents,
v.
CITY COUNCIL OF the CITY OF JERSEY CITY, 134 Bay Street, L.L.C.,[1] and 126-142 Morgan Street Urban Renewal, Defendants-Respondents.
DOCKET NO. A-4570-08T3.
Superior Court of New Jersey, Appellate Division.
Argued April 13, 2010.
Decided May 17, 2010.
*1056 Michael B. Kates, Hackensack, argued the cause for appellant (Kates Nussman Rapone Ellis & Farhi, L.L.P., attorneys; Mr. Kates, of counsel and on the brief).
William C. Matsikoudis, Corporation Counsel, argued the cause for respondent City Council of the City of Jersey City (Mr. Matsikoudis, attorney; Judith D. O'Donnell, Assistant Corporation Counsel, on the brief).
Carl S. Bisgaier, Cherry Hill, argued the cause for respondents 134 Bay Street, L.L.C., and 126-142 Morgan Street Urban Renewal (Bisgaier Hoff, L.L.C., and Connell, Foley, L.L.P., Jersey City, attorneys; Richard J. Hoff, Jr., Cherry Hill, and Mr. Bisgaier, on the briefs).
Respondents Marc N. Simon, Jill Edelman, Evan Gourvitz, Brian Gustafson, Charles Kessler, Thomas Grill, Richard James, Harsimus Cove Association, Richard Tomko, Kathryn Leonard, John Gomez, and Joshua Parkhurst have not filed a brief.
Before Judges PARRILLO, LIHOTZ and ASHRAFI.
The opinion of the court was delivered by
PARRILLO, J.A.D.
In an action in lieu of prerogative writs, plaintiff Powerhouse Arts District Neighborhood Association (PADNA or plaintiff) and others challenged a redevelopment plan amendment proposed by defendants 134 Bay Street, L.L.C. and 126-142 Morgan Street Urban Renewal (developers), and adopted by defendant City Council of the City of Jersey City (Council). Following a hearing on the record developed before the Council and Planning Board (Board), the Law Division upheld the amendment's adoption. Plaintiff appeals, arguing that the court applied the incorrect standard of review, that the amendment was so fundamentally contradictory to the original plan adopted only four years earlier that it should fail under any standard of review, and that lots blighted years earlier were improperly included under the plan without any evaluation of whether they remained in need of redevelopment. We reject these arguments and affirm.
By way of background, in 2004, Council designated a sizeable area in downtown Jersey City, populated largely with vacant, though historically significant, industrial buildings, as in need of redevelopment pursuant to the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -73. That area constitutes the bulk of what is now the Powerhouse Arts District (PAD), envisioned as a district preserving the historical character of the area and providing ample and affordable living and working space for artists. Council had already begun zoning the area and encouraging its development to that effect pursuant to the Work and Live District Overlay *1057 Zone (WALDO) ordinance adopted in 1996 and its successor, WALDO II, in 2001.
After the redevelopment designation, Council promptly adopted a redevelopment plan covering not only the PAD study area that had recently become blighted, but also several adjacent lots that were included in the Bay Street Area Redevelopment Plan adopted twenty-nine years earlier. The properties that were shifted to the PAD redevelopment planBlock 172, Lots A through D and Block 171 (the Manischewitz lots)were properly blighted pursuant to the LRHL's predecessor statute.[2] These industrial lots were purposely excluded from WALDO and WALDO II to encourage Manischewitz to continue its operations there, though the lots now lie vacant and unused.
The PAD redevelopment plan largely followed the recommendations of an Urban Land Institute (ULI) report commissioned by the city and emphasized the development of "a vibrant neighborhood with primary emphases on the arts, entertainment and culture," as well as preservation of existing industrial structures. Although the district included a high-rise zone, it was otherwise divided between a rehabilitation zone "designed to accommodate the adaptive re-use of the existing historic resources in the district[,]" and a transition zone designed as a buffer. The plan was amended three times in as many years, most notably when the Powerhouse Arts Residence Zone was introduced within the PAD to accommodate high-rise structures as part of a settlement of federal court litigation.
In the fall of 2007, developers 134 Bay Street and 126-142 Morgan Street Urban Renewal, who owned, within the PAD, the Manischewitz lots and Block 140, respectively, proposed a plan amendment creating an Arts Theater Residence Overlay Zone (ATROZ) covering those lots and the cobblestone public right of way sandwiched between Blocks 140 and 171.[3] The amendment primarily relaxed existing height and density requirements to accommodate the developers' planned high-rise structures, but was conditioned on the construction of a 550-seat non-profit performing arts theater with exhibition space, an artist-in-residence unit, a parking lot for the theater and surrounding neighborhood, an art-themed public plaza reusing cobblestones from the existing public right of way and workforce housing or a per-unit financial contribution. Furthermore, the developers would be responsible for an "arts contribution" of up to $1.1 million dedicated to funding operation of the theater and other "arts-related uses" within the ATROZ. Pursuant to the proposal, existing structures would be demolished, except only the façade of the historic A & P Annex building on the Manischewitz lots, which would be preserved and restored.
The Board scheduled a public hearing on the amendment, and appropriate public notice was published in a local newspaper, The Jersey Journal. At the November 27, 2007 hearing, the developers presented expert testimony from an architect, who explained the proposal itself and, briefly, how the planned development would fit in with the surrounding area. Particularly, the witness discussed in some detail the proposed structures' heights and their consistency with those of the existing or proposed adjacent developments and, to that end, presented the results of a study analyzing the shadow that would be cast by *1058 the proposed development throughout the year.
The developers also produced a professional planner, who testified about the extent to which their proposal was consistent with Jersey City's master plan, advanced the goals of the existing PAD plan and conformed with recommendations in the ULI report on which that plan was based. Specifically, the expert discussed how the privately developed public plaza and "pocket park" with surrounding retail and arts-related facilities would further the goal of developing a mixed-use area suitable for pedestrian use and enjoyment, as well as how the theater would serve as a "major arts anchor" for the area. While acknowledging that the proposal departed from the PAD's intention that redevelopment be dedicated to work/live residential units, a portion of those affordable and available exclusively to artists, the expert explained that the proposed development would nonetheless include some middle-income residential units available, albeit not exclusively, to artists.
Plaintiff presented its members, members of other advocacy groups and other residents of the neighborhood, as well as experts in architecture and professional planning. Those witnesses testified to the historical background of the PAD and its redevelopment, to the goals set forth in the initial PAD plan pursuant to the ULI's recommendations and to the extent to which the existing plan has succeeded. They further testified, many based on their personal experiences of having lived in the area, to what they believe is a drastic incongruence between, on the one hand, the developers' proposal and, on the other hand, both the development that was envisioned in the initial PAD plan and what residents expected when they moved to the area.
The hearing was continued to January 16, 2008, to hear testimony from Robert Cotter, Director of the Jersey City Division of City Planning. Based largely on his experience and personal knowledge of those matters, Cotter recounted the factual background of the PAD's redevelopment and its progress, and then addressed inconsistencies between the developers' proposal and the master plan, as well as the benefits and drawbacks of the proposal, in light of that background. In his view, although the demolition of all but the façade of the A & P Annex building, as well as the construction of high-rise buildings in the area, would run afoul of the historic preservation element of the master plan, the proposal's other benefits, such as the construction of the performing arts theater and public plaza, outweighed its negative aspects and were consistent with the overall purpose of the PAD plan.
The Board voted unanimously to recommend adoption of the amendment despite its acknowledged inconsistencies with the master plan. Consequently, the Board adopted a resolution detailing those consistencies and inconsistencies, as well as its reasons for the recommendation, and remitted to Council a proposed ordinance, including minor changes to the developers' proposal, along with the resolution and a memorandum from Cotter.
After voting to introduce the ordinance, 08-039, at its regularly scheduled meeting two days later, and following appropriate public notice, Council held a hearing on April 9, 2008, where many members of the public testified, mostly in opposition to the proposed ordinance. A majority of the Council nonetheless approved it, each member setting forth his or her reasoning on the record.
Moreover, the ordinance itself memorialized Council's reasoning that adoption of the amendment, although to some extent *1059 inconsistent with the master plan, was nonetheless "in the public interest," because
these amendments are intended to encourage the creation of an arts related anchor, in the form of a performing arts theater, which can help stimulate and accelerate the pace of redevelopment of the Area and attract artists, as well as people interested in the arts, to the district. It has also become apparent that there is a growing need to continue to provide affordable housing, not only for the artist community, but for all eligible residents of Jersey City. The housing element of the Master Plan specifically states that there is a significant need for affordable housing. The Fair Share Plan also says that the City continues to have a demand for more affordable housing units to meet the needs of its residents, and states that providing a full range of affordable housing will continue to be a priority of the City. Therefore, it is important to balance the recommendations of the Master Plan relative to the need for affordable housing with the recommendations related to the former WALDO district. The provision of additional market rate housing is also important in order to provide a more diverse and balanced resident population and provide for an appropriate density of population necessary to support the arts and entertainment venues as well as the ancillary retail and commercial components necessary to create an economically viable and sustainable community. Finally, these amendments seek to create a much needed public pedestrian open space at the southern end of the PAD to function as a gateway into the district from the nearby Grove Street PATH Station and further support and enhance the performing arts district. This along with the additional support parking to be created will help ensure the success and continued redevelopment of the entire PAD.
Plaintiff and others[4] filed a complaint in lieu of prerogative writs against the developers and Council, challenging adoption of the ordinance. Following a hearing, the Law Division judge dismissed the amended complaint with prejudice. This appeal follows.

I.
Plaintiff argues that Council's adoption of an amendment that "fundamentally contradict[ed]" a plan adopted only four years earlier is not supported by "substantial evidence in the record," a standard of review that plaintiff characterizes as a heightened one and applicable here. In this regard, plaintiff claims that the expert testimony on which Council relied was insufficient because it never assessed the success of the existing plan, and that, in any event, the plan had been successful, because an "arts community had taken hold" and other lots in the area were already improved pursuant to the plan. We disagree that the "substantial evidence" standard applies to our review and hold that Council's action was neither arbitrary nor capricious, but rather adequately reasoned and grounded in the record.
*1060 Both the "substantial evidence" and "arbitrary and capricious" standards are deferential to agency action. Cell S. of N.J., Inc. v. Zoning Bd. of Adj. of West Windsor Twp., 172 N.J. 75, 89, 796 A.2d 247 (2002). Indeed, where appropriate, they often appear in tandem. See, e.g., N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85, 955 A.2d 886 (2008). However, by formulation, they apply to different aspects of agency decision-making.
Insofar as a decision involves individualized fact finding, a court's review is limited to whether that decision is grounded in "sufficient" or "substantial evidence" in the record. Infinity Broad. Corp. v. N.J. Meadowlands Comm'n, 377 N.J.Super. 209, 224-228, 872 A.2d 125 (App.Div. 2005), rev'd on other grounds, 187 N.J. 212, 901 A.2d 312 (2006); see also McGowan v. N.J. State Parole Bd., 347 N.J.Super. 544, 562, 790 A.2d 974 (App.Div.2002) (parole board's factual findings must be supported by "sufficient" or "substantial evidence"). A board of adjustment's particularized findings on an application for a zoning variance, for example, invites that standard. Rowatti v. Gonchar, 101 N.J. 46, 51-52, 500 A.2d 381 (1985). So does a blight designation, whose central feature is a finding of certain statutory criteria with respect to specific parcels of property. ERETC, L.L.C. v. City of Perth Amboy, 381 N.J.Super. 268, 277-78, 885 A.2d 512 (App.Div.2005). Consequently, the LRHL explicitly conditions the validity of such a designation on whether it is "supported by substantial evidence." N.J.S.A. 40A:12A-6b(5).
In contrast, a municipality's adoption of a zoning ordinance or, as here, a redevelopment plan, is a discretionary decision of broader application. Infinity Broad. Corp., supra, 377 N.J.Super. at 225, 872 A.2d 125. A court will uphold such an exercise of discretion unless "arbitrary or capricious, contrary to law, or unconstitutional." Downtown Residents for Sane Dev. v. City of Hoboken, 242 N.J.Super. 329, 332, 576 A.2d 926 (App. Div.1990). Although the adoption of a municipal ordinance ordinarily does not require any formal findings of fact or, consequently, the presentation of "evidence . . . providing a factual foundation for the ordinance," Hirth v. City of Hoboken, 337 N.J.Super. 149, 165-66, 766 A.2d 803 (App. Div.2001), the LRHL specifies that
[a]ll provisions of the redevelopment plan shall be either substantially consistent with the municipal master plan or designed to effectuate the master plan; but the municipal governing body may adopt a redevelopment plan which is inconsistent with or not designed to effectuate the master plan by affirmative vote of a majority of its full authorized membership with the reasons for so acting set forth in the redevelopment plan.
[N.J.S.A. 40A:12A-7d.]
Thus, findings underlying the municipal governing body's redevelopment decision, including any regarding the plan's consistency or inconsistency with the master plan, must be adequately supported by the record,[5] lest the resulting plan adoption be arbitrary or capricious. Infinity Broad. Corp., supra, 377 N.J.Super. at 225, 872 A.2d 125. We discern no reason to accord a less deferential standard of review to the adoption of a significant *1061 amendment than to the adoption of the initial plan.
Nothing in Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344, 924 A.2d 447 (2007), is to the contrary. There, the Court applied the "substantial evidence" standard to review a blight designation, not a redevelopment plan adoption. Id. at 372-73, 924 A.2d 447. The primary import of Gallenthin was its interpretation of blight-designation provisions of the LRHL in light of the takings provision of the State Constitution, and, even insofar as it addressed the appropriate standard of review in that context, the Gallenthin Court did not alter, but merely clarified, the standard. Id. at 373, 924 A.2d 447 (citing ERETC, supra, 381 N.J.Super. at 277-81, 885 A.2d 512) (explaining that the net opinion of an expert is insufficient support).
Nonetheless, plaintiff argues that the adoption of the ordinance at issue here was without a rational basis. Plaintiff contends that the area was blighted, and the PAD plan was devised to encourage development of mid-rise, low-density structures preserving the historical industrial atmosphere of the neighborhood. Because that plan has been successful, plaintiff claims that it cannot be changed rationally. However, nothing in the statute either precludes a successful plan from being substantially amended or requires that a redevelopment plan forever depend upon the initial impetus for the blight designation. A blight designation and subsequent adoption of a redevelopment plan are independent municipal actions governed by separate sections of the LRHL. Furthermore, whatever the merits of the argument that continuation of the existing PAD plan was the superior option, Council rejected it, and that was Council's prerogative so long as the rejection was neither arbitrary nor capricious.
As the Law Division concluded, Council's adoption of the ordinance was not arbitrary or capricious, because it had adequate support in the record created before the Board and Council. There, the developers' architect and planning expert explained the proposal, while Cotter, based on his experience and personal knowledge of the area and history of its development, as well as facts in the record, exhaustively addressed its consistencies and inconsistencies with the existing PAD plan and master plan. Insofar as Council adopted the ordinance despite those inconsistencies, it appropriately explained its reasons therefor in the ordinance itself. See N.J.S.A. 40A:12A-7d (providing that "the municipal governing body may adopt a redevelopment plan which is inconsistent with or not designed to effectuate the master plan by affirmative vote of a majority of its full authorized membership with the reasons for so acting set forth in the redevelopment plan").
Finally, insofar as plaintiff nakedly asserts that Council's adoption of the amendment was the product of favoritism, "[a]n ordinance enacted to advance the general welfare by means of a comprehensive plan is unobjectionable even if the ordinance was initially proposed by private parties and these parties are in fact its ultimate beneficiaries." Taxpayers Ass'n of Weymouth Twp. v. Weymouth Twp., 71 N.J. 249, 262, republished as corrected, 80 N.J. 6, 364 A.2d 1016 (1976), cert. denied sub nom. Feldman v. Weymouth Twp., 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). Those challenging the ordinance bear the burden of proving otherwise, ibid., and plaintiff has not done so here.

II.
Plaintiff contends that, even if the amendment's adoption was proper, Council had inappropriately included the Manischewitz *1062 lots in the plan four years earlier without evaluating whether they remained in need of redevelopment, pursuant to N.J.S.A. 40A:12A-5, or were "compatib[le]" with the independently blighted PAD study area. In other words, the blight designation became "stale" by the time the Manischewitz lots were included in the plan twenty-nine years later. We disagree.
As the Law Division concluded, Council's approval of an amendment to a redevelopment plan was governed by the provisions of N.J.S.A. 40A:12A-7, rather than those of N.J.S.A. 40A:12A-5, which govern only an initial blight designation. Thus, Council need not have reevaluated any of the properties according to the criteria enumerated in the latter section while it was adopting a redevelopment plan pursuant to the former.
As a threshold matter, although neither defendant nor the court raised any limitation issue, the time for plaintiff to contest Council's inclusion of the Manischewitz properties in the PAD plan in 2004 is well passed. Even aside from the forty-five-day limitation on challenges to the adoption of a redevelopment plan by action in lieu of prerogative writ, R. 4:69-6(a), plaintiff's four-year acquiescence to Council's well-known inclusion of those lots in the PAD estops it from now challenging that inclusion. Cf. Summer Cottagers' Ass'n of Cape May, N.J. v. City of Cape May, 19 N.J. 493, 501-06, 117 A.2d 585 (1955) (holding that the plaintiffs were estopped from challenging a public sale of land as ultra vires because they failed to protest until the buyer had already executed wellpublicized plans for construction).
The due process and takings implications of a blight designation may justify relaxation of the limitation. See Harrison Redevelopment Agency v. DeRose, 398 N.J.Super. 361, 367-68, 942 A.2d 59 (App. Div.2008) (holding that, where notice is constitutionally deficient, the owner of a property preserves the right to contest a blight designation in the condemnation action). Here, however, plaintiff contests merely an amendment to a redevelopment plan, not a blight designation itself, and does not argue that any notice it received prior to adoption of the original PAD was deficient either statutorily or constitutionally. Moreover, plaintiff does not own the property. See Iron Mountain Info. Mgmt., Inc. v. City of Newark, 405 N.J.Super. 599, 620, 966 A.2d 62 (App.Div.) (holding that commercial tenants were bound by forty-five-day filing requirement under the rules even though they were not afforded individual notice of the meeting where the property was designated blighted), certif. granted, 199 N.J. 517, 973 A.2d 385 (2009).
Plaintiff's argument fails on its merits. It presumes that an area designated in need of redevelopment pursuant to N.J.S.A. 40A:12A-5 must thereafter be treated as a discrete and indivisible bundle of lots for purposes of redevelopment pursuant to N.J.S.A. 40A:12A-7. Lots blighted independently, according to that argument, cannot be covered under the same redevelopment plan unless they are first reevaluated together pursuant to N.J.S.A. 40A:12A-5.
However, no such requirement appears in the statute. As already discussed, an initial blight designation and subsequent adoption of a redevelopment plan are independent municipal actions governed by separate sections of the LRHL. Hirth, supra, 337 N.J.Super. at 164, 766 A.2d 803. The section relevant here provides that a redevelopment project must cover a project area "located in an area in need of redevelopment or in an area in need of rehabilitation, or in both[.]" See N.J.S.A. 40A:12A-7a (emphasis added). It thus *1063 contemplates that an area designated in need of redevelopment is not indivisible and may be joined with other areas or parts of other areas already blighted for redevelopment purposes.[6]
A blight designation need not remain valid indefinitely. Downtown Residents, supra, 242 N.J.Super. at 339-40, 576 A.2d 926. However, its reconsideration remains the appropriate legislative authority's prerogative and invites no greater scrutiny from the courts than that ordinarily accorded to municipal action. Ibid. Insofar as plaintiff suggests that the blight designation of the Manischewitz lots might be "stale" even while conceding that the forty-year duration of the PAD plan was reasonable, it fails to demonstrate why these lots, which, after all, are vacant, no longer satisfy the statutory criteria to qualify as in need of redevelopment. Plaintiff emphasizes only that the initial designation preceded the adoption of the PAD plan by twenty-nine years, but the "[m]ere passage of time does not erase [the] validity of a blighted area designation." Id. at 340, 576 A.2d 926. Without more, plaintiff cannot carry its burden of demonstrating that the adoption of the PAD plan was arbitrary, unreasonable or capricious.
Affirmed.
NOTES
[1] Incorrectly captioned in the Law Division as 136 Bay Street, L.L.C.
[2] The earlier plan itself has not been produced.
[3] Pursuant to the amendment provisions of the PAD plan, the developers remitted copies of the proposal along with a $10,000 escrow payment to the Board on October 2, 2007.
[4] Individual plaintiffs were Marc N. Simon, Jill Edelman, Evan Gourvitz, Brian Gustafson, Charles Kessler, Thomas Grill and Richard James. An amended complaint named as additional plaintiffs Harsimus Cove Association, Richard Tomko, Kathryn Leonard, John Gomez and Joshua Parkhurst. The Historic Paulus Hook Association, Van Vorst Park Association, Newport Neighborhood Association, Jeffrey Elkind, Pro Arts and Civil JC were permitted to participate as amici curiae.
[5] It is of some significance, though, that procedural requirements for building that record are decidedly less burdensome for consideration of a redevelopment plan than for consideration of a blight designation, where the "substantial evidence" standard remains the principally applicable one. Compare N.J.S.A. 40A:12A-6, with N.J.S.A. 40A:12A-7.
[6] An exception may be a lot whose blight designation is peculiar to its inclusion in a particular area. See N.J.S.A. 40A:12A-3 (stating that "[a] redevelopment area may include lands . . . which of themselves are not detrimental to the public health, safety or welfare, but the inclusion of which is found necessary, with or without change in their condition, for the effective redevelopment of the area of which they are a part"). Plaintiff does not argue and the record does not indicate that the Manischewitz lots fit that exception.