**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3063-17T1

CAROL CRISPINO, VILMA
VERBER, MARK EDWARDS,
JORGE CABRERA, STEPHEN
CAPPADORA, PAUL O'KEEFE,
KENNETH GARDNER, and
MARY GARDNER,

      Plaintiffs-Respondents,

v.

TOWNSHIP OF SPARTA,

      Defendant-Appellant.

_____

Argued April 1, 2019 – Decided May 6, 2019

Before Judges Fasciale and Rose.

On appeal from Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0500-16.

Thomas N. Ryan argued the cause for appellant (Laddey Clark & Ryan, LLP, attorneys; Thomas N. Ryan and Jessica A. Jansyn on the briefs).

John E. Ursin argued the cause for respondents (Schenck Price Smith & King, LLP, attorneys; John E. Ursin and Sandra Calvert Nathans, on the brief).

PER CURIAM

This appeal has its genesis in the imposition of a special assessment by defendant Township of Sparta on the owners of fifty-eight properties for the rehabilitation of a private dam owned by the Glen Lake Beach Club, Inc. (GLBC). Plaintiffs Carol Crispino, Vilma Verber, Mark Edwards, Jorge Cabrera, Stephen Cappadora, Paul O'Keefe, Kenneth Gardner and Mary Gardner are eight of those property owners. The assessment was imposed pursuant to Resolution 6-1, which was adopted by the Township Council following recommendations by the Township's expert consultant, Scott Holzhauer, CTA, SCGREA.

Thereafter, plaintiffs filed a complaint in lieu of prerogative writs in the Law Division. Pertinent to this appeal, plaintiffs challenged the special assessment, seeking a declaration that the resolution was void. Following oral argument, the trial court granted plaintiff's application and remanded the matter to the Council to recommence the special assessment process. The Township filed a motion for reconsideration, which the court denied as to the issues on appeal. In sum, the trial court concluded the Council should have "excluded"

A-3063-17T1

Holzhauer's report because the expert's method of allocating the assessment was a "net opinion" and, as such, reliance on the report was "arbitrary and unreasonable."

On appeal, the Township renews the arguments it raised before the trial court. Because we conclude the court improperly determined the expert's opinion was net, and Holzhauer's report provided a sufficient basis to support the Township's adoption of Resolution 6-1, we reverse.

I.

The GLBC is a private association, which was established to enable its members and their guests "to enjoy boating, fishing, swimming and socializing in a peaceful and pleasant environment" on the lake created by the private dam at issue. Memberships with voting rights are available to property owners who reside within a certain proximity to the lake; "special membership[s]" without voting rights are available to members who do not live in that proximity. Although plaintiffs are not members of the GLBC, their proximity to the dam qualifies them for membership.

In approximately 2002, the New Jersey Department of Environmental Protection (NJDEP) mandated repairs and rehabilitation of the dam (project) to comply with State codes. In 2008, the GLBC applied for a loan to finance the

project pursuant to the NJDEP's Dam Restoration and Inland Waters Projects Loan Program, N.J.A.C. 7:24A-1.1 to -5.1. As required by N.J.S.A. 58:4-12(d),[1] the Township cosigned the loan agreement, and planned for its repayment through a special assessment on the properties benefitting from the project. In 2012, the GLBC noticed "property owners within the surrounding area" of the lake that the Township would allocate and collect the cost of the project from "various property owners."

Thereafter, the Council enacted ordinances, which authorized a special assessment to repay the loan, and established the Assessment Commission to determine the assessment.[2] Among other things, the Commission was

---

[1] N.J.S.A. 58:4-12(d) provides, in pertinent part:

> Loans awarded under this section to owners of private dams or lake associations shall require local government units to act as co-applicants. The cost of payment of the principal and interest on these loans shall be assessed, in the same manner as provided for the assessment of local improvements generally under chapter 56 of Title 40 of the Revised Statutes, against the real estate benefited thereby in proportion to and not in excess of the benefits conferred . . . .

[2] In its initial decision the trial court also declared void the Township's ordinance appointing the Commission. On reconsideration, the court determined that ordinance was valid. The ordinance's validity is not an issue on appeal.

4

empowered to survey the property after the improvement was completed; hold a hearing on notice to "all owners of all real estate affected"; and "[c]ertify the amount of the assessment to the Mayor and Council by a written report duly signed and accompanied by a map showing the subject real estate."

The Township then appointed Holzhauer to assist in determining the assessment. Holzhauer made multiple site inspections, during which he observed the project and the properties identified within the GLBC's boundary. Among other documents, Holzhauer reviewed the GLBC's by-laws, the governing statutes for private and public improvement projects, and the co-borrower agreement between the Township and the GLBC.

In an eleven-page report, exclusive of exhibits, Holzhauer recommended the Commission allocate the special assessment among fifty-eight properties within the boundary of the GLBC because only those properties derived a "specific benefit" from the project. Holzhauer defined the boundary by transposing the perimeter description contained in the GLBC's by-laws onto the Township's "most current [t]ax [m]aps[.]" Holzhauer did not include those properties "excluded by law, by the [c]o-[b]orrower [a]greement, or by the terms of the NJDEP [l]oan [a]greement, or that have otherwise been deemed to not be viable for building and/or lake access . . . ."

In designating properties for assessment, Holzhauer considered the Commission's "function," i.e.,

> to "allocate" the complete cost of the project in a logical manner – based on incremental benefit as judged or warranted – among ALL of the property owners within the project boundary that c[ould] be reasonably perceived as gaining a "peculiar benefit" or "advantage" (as per [N.J.S.A. 40:56-27[3]]). In this community, the benefit attributable to the . . . lake is based on the recreational amenity (through optional membership) it provides to any desirous owner within the reserve boundary, and the scenic vistas that are available to a great majority of the properties that surround it.

Pertinent to this appeal, Holzhauer selected fifty-eight properties based on the owners' "right . . . to become a member of the [GLBC] and therefore have access to the lake and other [GLBC] amenities." Holzhauer opined that the right to membership "enhance[d the] property value for these property owners" that was not otherwise available to anyone outside the GLBC boundary.

---

[3] Pursuant to N.J.S.A. 40:56-27:

> All assessments levied under this chapter for any local improvement shall in each case be as nearly as may be in proportion to and not in excess of the peculiar benefit, advantage or increase in value which the respective lots and parcels of real estate shall be deemed to receive by reason of such improvement.

Holzhauer's allocation among the selected property owners was based on a "[three]-tier approach," under which he assigned values for: (1) basic membership option lots; (2) lake access lots; and (3) lakefront lots. Because all fifty-eight properties were eligible for membership in the GLBC, Holzhauer "assigned a single 'share value' of 1.0." The properties located "immediately across the street from the lake, enjoying direct pedestrian access to the lake and generally unobstructed views, were assigned an incremental 0.5 share value over the base share value." The lakefront properties, "which enjoy unimpeded direct access to the lake, along with the potential for establishing lake edge improvements (docks, etc.), were assigned an incremental 1.0 share value over the base share." Holzhauer allocated the total cost of the assessment to each property based on its share value.

In June 2016, the Commission recommended that the Council adopt Holzhauer's "formulaic approach . . . result[ing] in the special assessments as reflected in the spreadsheet" set forth in his report. During the next two months, the Council held public meetings concerning a proposed resolution to adopt the special assessment. During the July 26, 2016 meeting, after some affected property owners commented that the Commission failed to consider certain

information concerning the GLBC's boundaries, the Council carried the resolution.

The Commission then considered the information and determined it did not affect Holzhauer's special assessment allocation, and recommended that the Township adopt Holzhauer's report. On August 23, 2016, the Council held a final public meeting, during which it adopted Resolution 6-1 permitting the Township to impose the special assessment.

Relevant here, in its ensuing decision the trial court rejected Holzhauer's opinion as net for failure to "provide a methodology for including the houses that were selected to be a part of the special assessment." Recognizing the expert need not employ a "fair market benefit analysis," the court nonetheless determined Holzhauer's methodology was arbitrary because it was based on eligibility for membership in the GLBC. The court elaborated:

> [S]uch indiscriminate power on behalf of the GLBC invites ludicrous results. Under that theory, the GLBC, a private entity, could have amended [its] by-laws to include the whole Township of Sparta, and that could have been used as a methodology by the expert, requiring all property owners in the Township to contribute to the assessment.

II.

A.

We begin our review by recognizing we ordinarily defer to a trial court's decision to admit expert testimony to "ensure that the proffered expert does not offer a mere net opinion." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011); N.J.R.E. 703. An expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Townsend v. Pierre, 221 N.J. 36, 54 (2015) (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)).

Arguably, however, the Rules of Evidence do not apply to hearings conducted by a municipality seeking to impose a special assessment. Cf. N.J.R.E. 101(a)(3) ("proceedings before administrative agencies shall not be governed by the [R]ules"); N.J.S.A. 50:55D-10(e) (providing planning boards are not subject to the Rules); Baghdikian v. Bd. of Adjustment, 247 N.J. Super. 45, 49 (App. Div. 1991) (stating that a zoning board "cannot be equated with courts" and "procedural safeguards employed in judicial proceedings" should not be "imported wholesale" into proceedings before a land use board (quoting City of Hackensack v. Winner, 82 N.J. 1, 29 (1980))). On that basis alone, the court's application of the net opinion rule to bar Holzhauer's unrefuted

methodology was misplaced. Indeed, a non-testimonial hearing by a municipal body considering a special assessment, should not be subject to the stringent evidential standards applicable to judicial proceedings. See N.J.R.E. 101(a)(2).

Nonetheless, assuming arguendo that the net opinion rule applies here, Holzhauer's report clearly sets forth the "why" and "wherefore" of his methodology. For example, Holzhauer limited the universe of properties affected by the assessment to those "within the boundary of the [GLBC][,]" thus dispelling the trial court's concern that the GLBC's by-laws could have been amended to include every property in the Township. Nor do we discern Holzhauer's methodology was arbitrary where, as here, it was based on those properties that "have access to the lake and other [GLBC] amenities." Indeed, Holzhauer selected the assessed properties because they met the statutory definition of "peculiar benefit" or "advantage" by virtue of their proximity to the lake and its recreational amenities "through optional membership[.]" Holzhauer's report further detailed his analysis and methodology for his "share value" allocation. We therefore agree with the Township that its expert's opinion was not net and was properly considered by the Council in adopting Resolution 6-1.

A-3063-17T1

B.

Moreover, the standard of judicial review applicable to actions of municipal governments is highly deferential.  Courts do not sit in judgment of the wisdom of municipal actions.  Municipal ordinances and resolutions are presumed to be valid and rational.  See First Peoples Bank of N.J. v. Twp. of Medford, 126 N.J. 413, 418 (1991); Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564 (1975).  In the absence of a constitutional or statutory violation, municipal action may be overturned only if it was arbitrary, capricious, or unreasonable.  See, e.g., Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 33 (2013); Powerhouse Arts Dist. Neighborhood Ass'n v. City Council of Jersey City, 413 N.J. Super. 322, 332 (App. Div. 2010); Cohen v. Bd. of Adjustment, 396 N.J. Super. 608, 615 (App. Div. 2007).

However, "municipal action is not arbitrary and capricious if exercised honestly and upon due consideration, even if an erroneous conclusion is reached." Bryant v. City of Atl. City, 309 N.J. Super. 596, 610 (App. Div. 1998).  Further, municipal actions enjoy a presumption of validity.  Ibid.  Accordingly, "a challenge to the validity of a municipal . . . action must overcome the presumption of validity—a heavy burden." Ibid.  Thus, courts focus on whether there was substantial evidence to support the decision.  See Concerned Citizens

of Princeton, Inc. v. Mayor & Council of Princeton, 370 N.J. Super. 429, 453 (App. Div. 2004).

In exercising its review, the court presumes assessments were regularly made and confirmed. See N.J.S.A. 40:56-33.[4] A property owner bears the burden of rebutting that presumption by clear and convincing evidence. McNally v. Teaneck Twp., 75 N.J. 33, 44 (1977); In re Pub. Serv. Elec. & Gas Co., 18 N.J. Super. 357, 364 (App. Div. 1952). On the one hand, the court does not simply search the record to determine if there is sufficient, credible evidence to support the municipality's decision as it would in review of an administrative agency decision. See, e.g. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (reciting the scope of review of administrative agency fact-finding). On the other hand, the court does not conduct a trial de novo on the proper assessment. Instead, the reviewing court is required to determine whether it is persuaded, by clear and convincing evidence, that the challenged decision was not "just and fair." N.J.S.A. 40:56-54.

---

[4] Although N.J.S.A. 40:56-33 pertains to public assessments, as noted above, loans made for private dams under N.J.S.A. 58:4-12(d) are assessed "in the same manner as provided for the assessment of local improvements generally under chapter 56 of Title 40 of the Revised Statutes."

Because we have concluded Holzhauer's opinion was not a net opinion, and the methodology utilized in his report was properly considered by the Council, we further conclude the Township's decision to adopt Resolution 6-1 was neither arbitrary nor unreasonable. Rather, the municipal action here was just and fair.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3063-17T1